INTERSTATE COMMERCE COMMISSION v. ALABAMA MIDLAND RY. CO. et al.

(Circuit Court, M. D. Alabama. July 9, 1895.)

No. 158.

1. REGULATION OF INTERSTATE COMMERCE—LONG AND SHORT HAUL.

The prohibition against charging a greater compensation, in the aggregate, for the transportation of passengers, or of like kind of property, for a shorter than for a longer distance, over the same line, in the same direction, the shorter being included in the longer distance, does not apply, ex-

cept where the charge for transportation is made under substantially similar circumstances and conditions for the shorter as for the longer distance.

**2. SAME.**

The courts are left to decide what are "substantially similar circumstances and conditions." Neither the congress, in making the law, nor the courts, in construing it, can fail to note the element of competition as it enters into the industrial life of the people, and perhaps in no department is it more important than in the carrying trade of the country. It could not have been the purpose of congress to ignore or to regard with disfavor the competing forces and interests, which, in many cases, result in so much benefit to so many classes of people.

**3. SAME.**

In the presence of competing lines of transportation from and to distant points, the circumstances and conditions are not the same as in cases where there are no questions of competing lines, and no questions of reduced rates of transportation between different and distant points, to be considered.

**4. SAME—"BASING POINTS" OR "TRADE CENTERS."**

While there may be cases where "basing points" or "trade centers" are fixed and determined arbitrarily, for the purpose of building up one locality at the expense of another, in violation of the spirit and provisions of the act of congress, it is common knowledge that Montgomery, Ala., was a distributing point before the railroad system was known, and when there were no trunk lines of railroad such as are now competing for a share of her business.

**5. SAME.**

Such basing points or trade centers as Montgomery, Ala., and Columbus, Ga., are necessarily determined by competition between lines engaged in, and seeking a share in, the carrying trade of the country. Water transportation is doubtless a large factor in the determination of such basing points. Other considerations may enter into the matter, but the real source of it must chiefly be found in the competition between the great lines of transportation, reaching out, as they do, for a share in the commerce of the country, and, as a general rule, cheapening the necessaries of life brought to every man's door.

**6. SAME—"COMBINATION RATES."**

A "combination rate" (made by adding to a competitive through rate, charged between a point of shipment and a basing point, a noncompetitive local rate charged between such basing point and a local station beyond) is not violative of the act to regulate commerce. In this case, to compel a reduction of the local rate to the same rate per ton per mile as the through rate would not pay operating expenses, and would be ruinous to the Alabama Midland Railway Company.

**7. SAME—"UNDUE OR UNREASONABLE PREFERENCE OR ADVANTAGE."**

The words "undue or unreasonable preference or advantage," contained in the third section of the act to regulate commerce, plainly imply that every preference or advantage is not condemned, but such, only, as are undue or unreasonable.

W. C. Oates, L. A. Shaver, and H. D. Clayton, U. S. Dist. Atty., for complainants.

Roquemore & White, for Central Railroad & Banking Co. of Georgia and others.

A. A. Wiley, for Alabama Midland Ry. Co. and others.

Ed. Baxter, for Louisville & N. R. Co.

BRUCE, District Judge. The complaint of the Board of Trade of Troy, Ala., against the Alabama Midland Railway Company and the Georgia Central Railroad Company and their connections, is that there is in the rates charged for transportation of property

by the railroad companies mentioned, and their connecting railroads, a discrimination against the town of Troy, in violation of the terms and provisions of the interstate commerce act of congress of 1887. It is specified that the Alabama Midland and the Georgia Central and their connecting roads discriminate against Troy, and in favor of Montgomery, in charging and collecting $3.22 per ton on phosphate rock shipped from the South Carolina and Florida fields to Troy, and only $3 per ton on such shipments to Montgomery, the longer distance point; and that the rock carried from such fields to Montgomery is hauled through Troy, so that the shorter distance is included in the longer distance. To the same purport is the next specification, which is as to cotton, viz.: That the rates on cotton established by said two roads and their connections on shipments to the Atlantic seaports, Brunswick, Savannah, and Charleston unjustly discriminate against Troy, and in favor of Montgomery, in that the rate per hundred pounds from Troy to points east is 47 cents; that the rate from Montgomery to same points east, the longer distance point, is only 40 cents; and that such shipments from Montgomery, over the road of the Alabama Midland, pass through Troy. Specification 4 is that the Alabama Midland and the defendant carriers connecting and forming lines with it from Baltimore, New York, and the East, to Troy and Montgomery, charge and collect a higher rate on shipments of class goods from those cities to Troy than on such shipments through Troy to Montgomery; the latter being the longer distance point by 52 miles. Again, that the rates on class goods from western and northwestern points, established by the defendants forming lines from those points to Troy (stating it as the complainants do), are relatively unjust and discriminating, as against Troy, when compared with the rates on such lines to Montgomery and Columbus; that Troy is unjustly discriminated against in being charged on shipments of cotton, via Montgomery, to New Orleans, the full local rate to Montgomery, by both the Alabama Midland and the Georgia Central. There are other specifications, but these are deemed sufficient for the consideration of the questions in the cause.

These specifications bring under consideration what is known as the "long and short haul clause," as well as other clauses of the act; and the claim and argument is that the difference in the charge for the transportation of property from points east or west to Montgomery and Troy is discrimination against Troy, and in violation of section 4 of the act, which provides:

"That it shall be unlawful for any common carrier subject to the provisions of this act to charge or receive any greater compensation in the aggregate for the transportation of passengers or of like kind of property, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included in the longer distance."

It may be conceded that the defendant railroad companies, the Midland and the Georgia Central, in cases of the transportation of property from eastern points, through Troy, to Montgomery, or from Montgomery to points east, as claimed, fall within the specifi-

cation of the complaint, and bring the case within the inhibition of the fourth section just quoted; if the charge for transportation is made "under substantially similar circumstances and conditions" for the shorter as for the longer distance. In the case of transportation of property from eastern or northeastern points (New York, Philadelphia, Baltimore, etc.), whether it is all rail, or by water to Savannah, and then by rail to Montgomery, through Troy, on the Midland, or from northwestern points (such as Cincinnati, Louisville, St. Louis, etc.), through Montgomery, to Troy, there is what may be called a "long haul"; and for this haul there are competing lines, all rail or all water, in some cases, or part by rail and part by water, and this gives rise to through rates, and through rates give rise to "basing points" or "trade centers," which, in the very nature of things, are determined by questions of competition between lines engaged in, and seeking a share in, the carrying trade of the country. Water transportation is, doubtless, a large factor in the determination of these basing points. Other considerations may enter into the matter, but the real source of it must chiefly be found in the competition between our great lines of transportation, reaching out, as they do, for a share in the commerce of the country, and, as a general rule, cheapening the necessaries of life brought to every man's door. Doubtless, there may be cases where these basing points or trade centers are fixed and determined arbitrarily, and where the motive for it may be a purpose to build up one locality at the expense of another, in violation of the spirit and provisions of the act of congress; but is that the case we are dealing with here? It is common knowledge —it is history—that Montgomery was a distributing point before the railroad system was known, and when there were no trunk lines of railroad, such as we now have, competing for a share of her business. Troy is a city of about 4,000 or 5,000 population, with two railroads, one of which has been but recently constructed. It is not a large distributing point; and it is not on any navigable water course. The complaint would almost seem to be that the railroad companies had not made her a basing point; and that Montgomery, west of her, on the Alabama river, and Columbus, east of her, on the Chattahoochee river, being basing points, this operated to her prejudice as a business point, which it no doubt does; and this is, perhaps, her real cause of complaint.

But the question is, has the act of congress been violated, and what is meant by the words "under similar circumstances and conditions"? These words are first used in the statute in section 2, which provides:

"That if any common carrier subject to the provisions of this act shall directly or indirectly, by any special rate, rebate, drawback, or other device, charge, demand, collect, or receive from any person or persons a greater or less compensation for any service rendered, or to be rendered, in the transportation of passengers or property, subject to the provisions of this act, than it charges, demands, collects, or receives from any other person or persons for doing for him or them a like and contemporaneous service in the transportation of a like kind of traffic under substantially similar circumstances and conditions, such common carrier shall be deemed guilty of unjust discrimination, which is hereby prohibited and declared to be unlawful."

This section of the statute is directed against special rates, rebates, drawbacks, or other devices, and has no application, directly at least, to the case at bar; but it shows the care and caution of the congress when it was dealing with such objectionable devices, calculated to favor particular persons or localities, and which might put almost every merchant or business locality at the mercy of corrupt management of the transportation lines. It may be that the caution used in framing the statute is on account of the inherent difficulty there is in the establishment of rules to govern all cases; and the courts are left to say what are "substantially similar circumstances and conditions" in any given case.

Neither the congress, in making the law, nor the courts, in construing the law, can fail to note the element of competition as it enters into the industrial life of the people; and, perhaps, in no department is it more important and controlling than in the carrying trade of the country. It could not have been the purpose of congress to ignore, or even to regard with disfavor, the competing forces and interests, which, in many cases, result in so much benefit to so many classes of the people. It has long since passed into a trite saying that "competition is the life of trade"; and, in the presence of competing lines of transportation from and to different points, the courts must see that the circumstances and conditions are not the same, as in cases where there are no questions of competing lines and reduced rates of transportation between different and distant points to be considered. In the case at bar there are questions of competing lines; and the proposition of the complainant is that, notwithstanding this, the circumstances and conditions are substantially the same; and that it is in violation of the fourth section of the statute to charge more for the short haul to Troy, the shorter distance, than to Montgomery, the longer distance point. This argument proceeds upon the view that distance is the controlling factor on a question of rate for transportation of property; and yet these other matters may be, and often are, more controlling than even distance itself. The long haul rate, as a rule, is favorable to shippers, and for an obvious reason: It involves less handling of the property transported, and rates per ton per mile for long hauls may be, and often are, inadequate for the shorter hauls. The purpose of congress could not have been to disregard this distinction, which is well understood and accepted, in questions of transportation.

It may be observed that the third section of the act does not contain the words "under substantially similar circumstances and conditions," and declares it to be unlawful "to make or give any undue or unreasonable preference or advantage to any particular person, company, firm, corporation, or locality, or any particular description of traffic in any respect whatsoever, or to subject any particular person, company, firm, corporation, or locality, or any particular description of traffic, to any undue or unreasonable prejudice or disadvantage in any respect whatsoever." The words "any undue or unreasonable preference or advantage" plainly imply that every preference or advantage is not condemned, but such, only, as

are undue or unreasonable. In cases where there are no questions of through rates to basing points or trade centers, it might not be difficult to apply the law to what might clearly appear to be unjust and unreasonable preference and advantage, and so leave a wide field for the operation of the statute.

The evidence shows that in cases of transportation of property from northwestern points (such as St. Louis, Cincinnati, or Louisville) to Troy, Ala., the shipments come to Montgomery, and from there to Troy; that the rate is so much from such shipping points to Montgomery; that the Alabama Midland Railroad charges what is called the "local rate" from Montgomery to Troy; and this is complained of. The Troy parties claim that they shall not only have the advantage of the reduced rates between the shipping points and Montgomery, but that they are entitled to such reduced rates from Montgomery to Troy. The same thing is claimed on cotton shipped from Troy to New Orleans, via Montgomery, which is a combination of a through rate to New Orleans from Montgomery, plus the local rate from Troy to Montgomery. The evidence shows that such a rate would be absolutely ruinous to the Midland; that it would not pay operating expenses; and, besides, there is no section of the law under which such contention can be maintained.

Again, in this connection, and by way of illustration, it may be asked, by what right or by what rule shall a common carrier, whose duty it is to serve the public impartially, be required to carry the goods shipped by a Cincinnati merchant, via Montgomery, to his customer at Troy, Ala., for a less rate than is charged upon goods of the same class shipped by a Montgomery merchant to his customer at Troy, Ala.? And does not the contention here that Troy parties are entitled to the same rates per ton per mile from Montgomery to Troy that they get from the shipping points in the Northwest to Montgomery invoke a violation of the spirit, if not the letter, of the law itself, and show that such contention cannot be sustained? There is a suggestion, however, that because the transportation is under a common control or arrangement for a continuous carriage or shipment, and under a through bill of lading, this operates, under the act, upon the rates that the roads participating in the carriage shall charge. Such a view as that cannot be maintained under any section of the act. By the first section of the act, it (the act) is made applicable to cases where the transportation is under a common control or management,—a point which has not and could not be questioned. But that such clause eliminates from the fourth section the words "under substantially similar circumstances and conditions" cannot be and is not contended.

In any aspect of the case, it seems impossible to consider this complaint of the Board of Trade of Troy against the defendant railroad companies, particularly the Midland and Georgia Central Railroads, in the matter of the charge upon property transported on their roads to or from points east or west of Troy, as specified and complained of, obnoxious to the fourth or any other section of the interstate commerce act. The conditions are not substantially the

same, and the circumstances are dissimilar, so that the case is not within the statute.

The case made here is not the case as it was made before the commission. New testimony has been taken; and the conclusion reached is that the bill is not sustained; . that it should be dismissed; and it is so ordered.