Louisville & Nashville Railroad Co. v. Commonwealth.

CASE 32—INDICTMENT FOR VIOLATING LONG AND SHORT HAUL STATUTE.—JUNE 23.

# Louisville & Nashville Railroad Co. v. Commonwealth.

APPEAL FROM MARION CIRCUIT COURT.

1. CONSTITUTIONAL LAW—LONG AND SHORT HAUL CLAUSE—KENTUCKY STATUTES, SEC. 820.—Section 820 of the Kentucky Statutes, defining the offense of charging more for a short haul than for a long one over the same line in the same direction and under substantially similar circumstances and conditions, the short haul included in the long one, is not unconstitutional in failing to include the proviso of section 218 of the Constitution authorizing the railroad commission after investigation to except the carrier from the application of the rule. That proviso

is self executing and conferred upon the carrier the right therein defined independently of the statute.

2. INDICTMENT—MULTIFARIOUSNESS.—An indictment under sec. 820 of the Kentucky Statutes, is not liable to the objection of stating two offenses in stating that the carrier charged a less rate on coal from Pittsburg to Louisville than to Lebanon, and also a less rate from Pittsburg to Elizabethtown than to Lebanon.

3. SAME—INDICTMENT.—Such an indictment need not state the amount charged for and received for the longer haul; nor the persons thus favored. The gravamen of the offense is charging for the shorter haul a greater rate than the prevailing rates for the longer haul.

4. SAME—CONDITION PRECEDENT.—If an investigation by the railroad commission and order following such investigation be a condition precedent to the right to return an indictment for violating the long and short haul statute, the language of the indictment "defendant at said time not having been authorized by the railroad commission of this Commonwealth to charge less for a longer than for a shorter distance for transportation of coal," is a sufficient allegation of the condition precedent.

5. SAME—CONSTRUCTION OF "SUBSTANTIALLY SIMILAR CIRCUMSTANCES AND CONDITIONS." On the trial of such an indictment evidence showing the existence of competition at the terminus of the longer haul is not competent, the language "under substantially similar circumstances and conditions" having reference solely to the actual cost of transportation, estimated with reference to necessary outlays and expenditures in carrying passengers and loading, moving, and unloading trains.

6. PRACTICE—INTERVENTION BY PERSONS NOT PARTIES TO THE RECORD.—One not a party to the record will not be permitted without notice to or consent of the parties to the litigation to file a supplemental petition for a rehearing.

In response to the intervening petition of sundry coal companies, the following additional point was held:

7. JURISDICTION TO REVISE THE FINDINGS OF THE RAILROAD COMMISSION.—This court has no jurisdiction to control the action of the railroad commission in the discretion vested in it by sec. 218 of the Constitution to relieve railroad companies from the operation of that section.

Louisville & Nashville Railroad Co. v. Commonwealth.

WILLIAM LINDSAY AND WALKER D. HINES FOR APPELLANT.
(H. W. BRUCE AND J. W. ALCORN OF COUNSEL.)

1. Section 820, Kentucky Statutes, on which the indictment was based, is inconsistent with sec. 218 of the Constitution, and, therefore void, and, consequently, the demurrer to the indictment should have been sustained.

2. The indictment is fatally defective for a variety of reasons, and, therefore, the demurrer to it should have been sustained.

3. The lower court erred to the prejudice of appellant in the admission of testimony and in the giving and refusing instructions.

4. Especially did the lower court err to appellant's prejudice in its construction of the long and short haul law of Kentucky, under which construction it excluded all testimony tending to justify the less rate for the longer distances on the ground of competition, and refused all instructions asked by appellant on that point.

Citations:   Foot, et. al., v. Utica & B. R. Co., N. Y. Ry. Com. Rep., 1884, vol. 1, p. 104; 21 Am. & Eng. R'd Cases, 63; Interstate Com. Com. v. B. & O. R. R. Co., 43 Fed. Rep., 37; Interstate Com. Com. v. B. & O. R. R. Co., 145 U. S., 263; Const. of Ky., sec. 218; Ky. Stat., sec. 820; Mo. Pac. R. R. Co. v. T. & P. Ry. Co., 31 Fed. Rep., 862; Ex parte Koehler, 31 Fed. Rep., 315; Interstate Com. Com. v. A., T. & S. F. R. Co., 50 Fed. Rep., 295; Behlmer v. L. & N. R. R. Co., et. al., 71 Fed. Rep., 835; Interstate Com. Com. v. Ala. Midland Ry. Co., et. al., 69 Fed. Rep., 227; Interstate Com. Com. v.Ala. Midland Ry. Co., 74 Fed. Rep., 715; C. & N. W. R. Ry. Co. v. Osborne, Same v. Junod, et. al., 52 Fed. Rep., 912; D. G. H. & M. Ry. Co. v. Interstate Com. Com., 74 Fed. Rep., 803; Social Circle Case, 4 I. C. C. Rep., 744; Interstate Com. Com. v. C., N. O. & T. P. Ry. Co., et. al., 56 Fed. Rep., 925; C., N. O. & T. P. Ry. Co., et. al., v. Interstate Com. Com., 162 U. S., 184; T. & P. Ry. Co. v. Interstate Com. Com., 162 U. S., 197; Interstate Com. Com. v. L. & N. R. R. Co., 73 Fed. Rep., 409; In re L. & N. R. R. Co., 1 I. C. C. Rep., 31.

EDWARD W. HINES ALSO FOR APPELLANT.

1. The indictment is bad and the demurrer to it should have been sustained.

   (a). In failing to allege an investigation by the commission.

    (b) For duplicity.

    (c) In failing to allege the rate on the longer haul.

    (d) In failing to allege that Louisville or Elizabethtown is in the same direction from Pittsburg as Lebanon.

    (e) In failing to allege that the two shipments, the longer and the shorter, were of goods of like kind, or of the same class.

2. The court erred in the rejection of evidence and in its instructions to the jury. Evidence on the question of competition at the terminus of the longer haul should have been admitted, and the defendant should not have been restricted to showing the actual cost of transportation.

    Citations: Bliss on Code Pleading, sec. 318; Texas, &c., R. R. Co. v. Interstate Com. Com., 162 U. S., 197; Phipps v. London & N. W. R. Co., 2 Q. B., 229; Behliner v. L. & N. R. R. Co., 71 Fed. Rep., 833; Interstate Com. Com. v. L. & N. R. R. Co., 73 Fed. Rep., 424; Same v. Alabama Mid. Ry. Co., 74 Fed. Rep., 723.

WALKER D. HINES IN A SUPPLEMENTAL BRIEF FOR APPELLANT, IN REPLY TO BRIEF FOR APPELLEE.

(H. W. BRUCE, WM. LINDSAY AND J. W. ALCORN OF COUNSEL.)

    From the debates of the Constitutional Convention upon sec. 218 but two points can be arrived at with certainty: First, that the object of the section was to prevent unjust discrimination and imposition upon people at intermediate points for the benefit of those at terminal points; to prevent railroad companies from running competitive business at a loss and making up from local business; to prevent breaking up little towns and building up big ones; and to prevent favoring one at the expense of another; second, that the convention had its attention called to the fact that the provision that they were considering was identical with the long and short haul provision of said act.

H. W. RIVES FOR APPELLEE.

    (No brief in the record.)

WILLIAM LINDSAY, WALKER D. HINES FOR APPELLANT IN A PETITION FOR A REHEARING.

(H. W. BRUCE, J. W. ALCORN AND E. W. HINES OF COUNSEL.)

    After the original opinion in this case had been handed down Clifton J. Pratt moved the court for leave to file a supplemental

petition for a rehearing in behalf of sundry parties affected by
the opinion delivered, but the court declined to permit a sup-
plemental petition to be filed without notice to or consent of
parties to the record.

CHIEF JUSTICE LEWIS DELIVERED THE OPINION OF THE COURT.

Appellant was in the Marion Circuit Court, upon rec-
ommendation of the State Railroad Commission, indicted
for the offense of charging greater compensation for
transporting property for a shorter than for a longer
distance, the particular circumstances being thus stated:
"The defendant,    *    *    *    operating a line of railroad
in this State extending from Pittsburgh through said
county of Marion and city of Lebanon, on September 8,
1894,    *    *    *    did transport a car load of coal from
Pittsburgh to Lebanon on said line for J. M. Shreve, and
unlawfully charged and received from him as compensa-
tion therefor $40.30, being at the rate of $1.55 per ton,
when for transportation of a similar car load of coal under
similar circumstances and conditions for a longer distance
over the same line of road, namely, from Pittsburgh to
Louisville and to Elizabethtown, in the same direction,
the distance from Pittsburgh to Lebanon being shorter,
and included within the longer from Pittsburgh to Louis-
ville and to Elizabethtown, said defendant at said time
did charge and receive less compensation than $1.55 per
ton from various persons at Louisville and Elizabeth-
town; defendant at said time not having been authorized
by the railroad commission of this Commonwealth to
charge less for a longer than for a shorter distance for
transportation of coal," etc.    As determination of the
question of sufficiency of the indictment, also of other
legal questions that arose during trial of this case in
the lower court, depend upon the construction to be given

section 218 of the Constitution and section 820, Ky. Stat., they are here copied entire:

"Sec. 218.   It shall be unlawful for any person or corporation owning or operating a railroad in this State, or any common carrier to charge or receive any greater compensation in the aggregate for the transportation of passengers or of property of like kind, under substantially* similar circumstances and conditions, for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier or person or corporation owning or operating a railroad in this State to receive as great compensation for a shorter as for a longer distance; *Provided,* that upon application to the Railroad Commission such common carrier or person or corporation owning or operating a railroad in this State may in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the Commission may, from time to time, prescribe the extent to which such common carrier, or person or corporation owning or operating a railroad in this State may be relieved from the operations of this section."

"Sec. 820.   If any person owning or operating a railroad in this State, or any common carrier, shall charge or receive any greater compensation in the aggregate for the transportation of passengers or property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line in the same direction, the shorter being included within the longer distance, such person shall, for each offense, be guilty of a misdemeanor, and fined not less than one hun-

dred nor more than five hundred dollars, to be recovered by indictment in the Franklin circuit court, or the circuit court of any county into or through which the railroad or common carrier so violating runs or carries on its business. Upon complaint made to the Railroad Commission that any railroad or common carrier has violated the provisions of this section, it shall be the duty of the Commission to investigate the grounds of complaint, and if, after such investigation, the Commission deems it proper to exonerate the railroad or common carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the Commission, and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the Commission; and after such order, the railroad or carrier shall not be prosecuted or fined on account of the complaint made. If the Commission, after investigation, fails to exonerate the railroad or carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the Commission, and a copy thereof delivered to the complainant, and the railroad or common carrier, and the same shall be published as a part of the report of the Commission; and after such order, it shall be the duty of the Commission to furnish a statement of the facts, together with a copy of its order, to the grand jury of any county, the circuit court of which has jurisdiction, in order that the railroad company or carrier may be indicted for the offense; and the Commission shall use proper efforts to see that such company or carrier is indicted and prosecuted."

It is made ground of demurrer that section 820, under which the indictment was found, is inconsistent with sec-

Louisville & Nashville Railroad Co. v. Commonwealth.

tion 218, and therefore, invalid, because there is omitted the proviso contained in the latter. But, as that proviso is self-executing, and gives to the carrier immediate right to make the application therein mentioned, and to the Commission full power to act upon it when made, iteration of it in the statute was needless. Certainly, section 820 does not at all interfere with the exercise of either the constitutional right of the carrier or constitutional power of the Commission. On the contrary, it contains the additional provision that, even without previous application by the carrier, the Commission may, after investigation, made upon complaint by another of violation of that section, exonerate such carrier from operation of its provisions.

Another ground of demurrer is that the indictment embraces two distinct offenses, "one the charging of a less rate to Louisville than to Lebanon, and the other of charging a less rate to Elizabethtown than to Lebanon." A statement in the indictment that *greater* compensation in the aggregate was charged and received from J. M. Shreve for transportation of coal from Pittsburgh to Lebanon than was charged and received from various persons for transporting coal from Pittsburgh to Louisville and Elizabethtown would have been more apt; but the statement as made does not vitiate the indictment, or involve accusation of more than one offense. Neither section 218 nor section 820 was intended to fix or limit the general rate of compensation for transporting persons and property, but specially to inhibit greater or as great compensation in the aggregate for shorter as for longer distances. So, whatever may have been the amount actually charged and received for transportation of coal from Pittsburgh to Louisville and Elizabethtown, the alleged offense was not, or could not be, completed until there

was charged and received from J. M. Shreve greater compensation for transporting coal from Pittsburgh to Lebanon, which consisted of a single act, and involved a single offense. The Criminal Code requires an indictment to describe and identify an offense in terms so direct and certain as to apprise the defendant of the accusation on which he is to be tried, and to make the verdict and judgment rendered available as pleaded in bar of a subsequent prosecution for the same offense. It was, therefore, necessary in the present indictment—as was done—to designate the person to the wrong and injury of whom the alleged offense was committed, and to state that the recited amount of compensation charged and received from him, on or about a specified date, for transportation of coal the described shorter distance was greater in the aggregate than the amount then being charged and received from various or divers persons for transportation of same kind and quantity of coal the described longer distance. But it was not necessary to state the precise amount charged and received for such longer distance, because the fact it was exceeded by or was less than the specified amount charged and received in the particular instance for the shorter distance had been already sufficiently alleged. Nor was it necessary to designate any particular person or persons, probably numerous, than whom Shreve had been charged and required to pay greater compensation; for section 218 was intended to prevent discrimination rather between localities than between persons. So, in order to convict of an offense like the present, it suffices to state in the indictment that the specified amount charged or received for the shorter distance was greater than that charged or received from persons generally or usually for the longer distance, and

to support the allegation by the carrier's published schedule of rates or other competent evidence of the fact.

There was also a motion made in the lower court to set aside the indictment because it does not contain a statement that the Railroad Commission, after investigation of the complaint that section 820 had been violated by appellant, made the required order refusing to exonerate it from operation of its provisions. Assuming, for the present, that such investigation and order following it must, in every case, precede an indictment under that section, we think the allegation made on the subject sufficient, and consequently the motion was properly overruled.

The facts stated in the indictment as constituting the offense charged were on the trial proved or admitted. But all testimony offered for the purpose of showing existence of competition at Louisville and Elizabethtown between carriers of coal or other facts affording reason or excuse, irrespective of cost of service, for charging or receiving greater compensation in the aggregate for the shorter than longer distance over appellant's road was excluded; and all instructions to the jury hypothecated upon such facts were refused. The following instruction, showing the construction put upon section 218 by the lower court, was given: "That in determining whether two or more car loads of coal are transported under substantially similar circumstances and conditions when one is transported for a longer distance over the same line of road than for a shorter distance in the same direction, the shorter distance being included within the longer distance, they (the jury) should consider such circumstances and conditions as relate to the nature and character of the service by the defendant in the

actual handling and movement of the coal transported."
Section 218, as will be observed, does not prohibit less
*proportional* compensation being charged or received for
the longer than shorter distance, but makes it an offense
to charge or receive, under substantially similar circum-
stances and conditions, greater compensation *in the ag-
gregate* for the shorter than for the longer distance. It
is proper here to consider the following part of that
section: "But this shall not be construed as authoriz-
ing any common carrier or person or corporation owning
or operating a railroad in this State to receive as great
compensation for shorter as for a longer distance." That
particular provision, we think, was not intended to neu-
tralize, nor could it very materially affect, what pre-
cedes it; for the difference between *greater* or *as great*
compensation  charged  or  received  for transportation
would ordinarily be too minute for calculation.    The main
inquiry in this case is whether the words "substantially
similar circumstances and conditions" were intended to
relate to the actual cost of transportation, estimated with
reference to necessary outlays and expenditures in carry-
ing passengers and loading, moving, and unloading freight
trains, or to competition at particular places in the business
of transportation, or other conditions affecting policy or
convenience of the carrier only. If attention be given
alone to the grammatical construction of section 218, the
words in question might possibly be made apply in
either or all the conditions mentioned.    But attending
to the sense of that section, which in character is both
remedial and prohibitory, or restraining, and manifestly
intended to conserve mutuality of rights and duties be-
tween parties to the contract of carrying, and prevent
wrong by one to the other, the natural conclusion would

be the words were designed to relate exclusively to the cost of service, for with that is the general public as well as the carrier concerned. And that legislative power exists to so regulate conduct of the business of a railroad corporation, including charges for transportation, as that those dealing with it be not wronged or oppressed, is unquestionable; for the chartered franchise and privileges of such corporation are always, and can be granted only, in consideration of public service to be rendered; and, of course, upon implied reservation of legislative power, to inhibit at any time unjust discrimination between persons and localities. But as the section seems to be not so plain to counsel as to preclude discussion, we will look to the reason for its adoption—always a sure guide to the meaning of lawmakers. As there existed in neither the former Constitution nor statutes enacted under it any provision of the character, scope, or purpose of section 218, it was obviously adopted to prevent continuance of what was deemed a wrong hitherto committed with impunity by reason of a defect of the law. Therefore, the nature of that wrong being ascertained, as may be readily done by recurring to facts of common occurrence, and too widely known to escape judicial notice, that interpretation should be given which will "most surely advance the remedy and suppress the mischief." For many years prior to the adoption of the present Constitution there had been general and unavailing complaint of discrimination by railroad companies of this State, respecting compensation charged and received, in favor of localities where existed competition in the business of transportation, and of comparatively excessive compensation being exacted at localities where, because there was not such competition, shippers were

at the mercy of the carriers. But it was argued substantially there, as here and now, that competition made such difference of circumstances and conditions as justified the discrimination complained of. The Legislature did not attempt to give relief. The court, in absence of an express statute on the subject, and as long as the amount of compensation charged or received was within the charter limit, could not intervene to prevent a railroad company adopting, as matter of assumed business policy, rates to meet competition. There was no complaint of discrimination between places on the same line of railroad where there was not competition. And, if there had been, the court was, upon common-law principles applicable to common carriers, empowered to prevent it, because such discrimination would have been wanton, and without excuse of business policy or necessity. It is thus made manifest the object of section 218 was to remedy a defect of the law by thereafter disallowing competition, or other considerations affecting the carrier only, not the general public, as excuse for charging or receiving greater compensation in the aggregate for transporting persons or property in this State the shorter than longer distance. And it is based upon two propositions: First. That the actual cost of transportation is not generally greater for the shorter than longer distance; therefore to charge and receive greater compensation in the aggregate for the former than the latter is unfair and oppressive. Second. That it is contrary to usual business methods, and not to be assumed, that a railroad company would, even under stress of competition, reduce rates of compensation for transportation to and from competitive points so low as not to leave a reasonable margin of profit; therefore an excess

of aggregate compensation for transportation to and from non-competitive points is generally an unjust and inexcusable extortion. So, if competition be held to constitute, in the meaning of section 218, the real difference of "circumstances and conditions," the section, though deemed of such urgent importance as to be made part of the organic law, would be scarcely effectual for any purpose whatever; for there could not be an approach to similarity, but necessarily a complete *dissimilarity*, of circumstances and conditions of the transportation of persons and property the longer distance, nearly always to and from a place where there is competition, and the shorter distance nearly always to and from a place where there is not competition. Consequently, discrimination in aggregate compensation between such localities could still be made at will of the carrier, and without legal restraint.

It is further contended that a railroad company should be permitted to vary rates of compensation regardless of cost of service, and even to the extent of arbitrary discrimination between localities, in order to develop resources of the State, and at the same time increase its own business. Due estimate should be put upon advantages to society that have resulted from the construction and will continue to result from the extension of railroads; and due regard should be had to the rights and interests of carriers as well as of those who patronize them. But such considerations do not justify a wrong interpretation, and consequent defeat, of the main purpose of section 218. After all, the best guaranty of success by the company and benefit to the general public from the operation of railroads is to abide by the law as it is, and deal fairly, justly, and impartially with persons and locali-

ties.  It is true that for well-known reasons there can not
be exact similarity of circumstances and conditions as
respects proportional cost of transportation the longer
and shorter distance.  But there is ordinarily a substan-
tial similarity as respects the actual cost.  Hence sec-
tion 218 prohibits, not greater proportional, but greater,
compensation in the aggregate being charged or received
for the shorter than longer distance.    However, the
framers of the Constitution, aware of the impracticability
of fixing unchangeably relative amounts of compensation
to be charged and received, or rules applicable in every
case to the complicated and varying business of rail-
roads, and of the injustice that might sometimes result
from doing so, invested the Railroad Commission with
power to authorize, in special cases, a railroad company
to charge less for the longer than shorter distance, and
to prescribe from time to time the extent to which such
company may be relieved from operation of section 218.
And section 820, enacted in harmony with section 218,
provides that, after an order of the Commission exoner-
ating a railroad company from operation of its provis-
ions as to any special violation complained of, the com-
pany shall not be prosecuted on account of it.  With
such order the court can not interfere.  But an order
of the commission refusing to exonerate makes the com-
pany liable to prosecution; and the court thus acquiring
jurisdiction, must, of course, determine the proper con-
struction of the two sections, for upon that, the facts
being found, depends guilt or innocence in each case.  As
already indicated, we think the lower court did not err
in giving the instruction referred to, nor in excluding all
evidence having no bearing upon the case of transporta-
tion.

Counsel have cited Texas Pacific R. Co. v. Interstate Commerce Commission, 162 U. S., 197 [16 Sup. Ct., 666], and Interstate Commerce Commission v. Alabama Midland R. Co. (recently decided by the Supreme Court of the United States) [18 Sup. Ct., 45], in which, construing section 4 of the Interstate Commerce Act, substantially like section 218, it was held that, when difference of rates between two points of shipment is the ground of complaint, competition is a leading element to be considered; though in each case the court was divided. The Interstate Commerce Act was intended to operate, not within limits of a State merely, but between and through States. And, whatever construction that high tribunal may put upon section 4 of that act, we, in exercise of the province belonging to the Supreme Court of each State to construe its own laws, have endeavored to so construe section 218 as not to kill it; and, to strengthen the belief we have not misconstrued it, part of the dissenting opinion of Justice Harlan in the last-named case is here quoted: "Besides, the acts of Congress are now so construed as to place communities on the lines of interstate commerce at the mercy of competing railroad companies engaged in such commerce. The judgment in this case, if I do not misapprehend its scope and effect, proceeds upon the ground that railroad companies, when competitors for interstate business at certain points, may, in order to secure traffic for and at those points, establish rates that will enable them to accomplish that result, although such rates may discriminate against intermediate points. Under such an interpretation of the statutes in question, they may well be regarded as recognizing the authority of competing railroad companies engaged in interstate

[16]

commerce, when their interests will be subserved thereby, to build up favored centers of population at the expense of the business of the country at large. I can not believe that Congress intended any such result, nor do I think that its enactments, properly interpreted, would lead to such a result." The judgment is affirmed.

Dissenting opinion was delivered by Judge DuRelle.

The provisions of law involved in this case are section 218 of the Constitution and section 820 of the Kentucky Statutes, as follows:

Const., sec. 218: "It shall be unlawful for any person or corporation owning or operating a railroad in this State, or any common carrier to charge or receive any greater compensation in the aggregate for the transportation of passengers or of property of like kind, *under subsantially similar circumstances and conditions*, for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier or person or corporation owning or operating a railroad in this State to receive as great compensation for a shorter as for a longer distance; provided that upon application to the Railroad Commission such common carrier or person or corporation owning or operating a railroad in this State may, in special cases, after investigation by the Commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers or property; and the commission may, from time to time, prescribe the extent to which such common carrier, or person, or corporation owning or operating a railroad in this State may be relieved from the operation of this section."

Ky. Stat., sec. 820: "If any person owning or operat-

Louisville & Nashville Railroad Co. v. Commonwealth.

ing a railroad in this State, or any common carrier, shall charge or receive any greater compensation in the aggregate for the transportation of passengers or property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line in the same direction, the shorter being included within the longer distance, such person shall, for each offense, be guilty of a misdemeanor, and fined not less than one hundred nor more than five hundred dollars, to be recovered by indictment in the Franklin Circuit Court, or the circuit court of any county into or through which the railroad or common carrier so violating runs or carries on its business. Upon complaint made to the Railroad Commission that any railroad or common carrier has violated the provisions of this section, it shall be the duty of the Commission to investigate the grounds of complaint, and if, after such investigation, the Commission deems it proper to exonerate the railroad or common carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the Commission, and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the Commission; and after such order, the railroad or carrier shall not be prosecuted or fined on account of the complaint made. If the Commission, after investigation, fails to exonerate the railroad or carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the Commission, and a copy thereof delivered to the complainant, and the railroad or common carrier, and the same shall be published as a part of the report of the Commission; and after such order, it shall be the duty of the

Commission to furnish a statement of the facts, together with a copy of its order to the grand jury of any county, the circuit court of which has jurisdiction, in order that the railroad company or carrier may be indicted for the offense; and the Commission shall use proper efforts to see that such company or carrier is indicted and prosecuted."

Without taking time in considering the question whether the statute is in conflict with the constitutional provision, in that it makes no provision for application to the Railroad Commission *by the carrier* for authority to charge less for the longer than the shorter haul in special cases, which was the evident intention of the Constitution, but provides only for a complaint *against the carrier* for a violation of the provisions of the statute, or the question whether the indictment is defective, I wish to call attention to the fact that section 218 of the Constitution is taken almost *verbatim* from section 4 of the Interstate Commerce Act. Our Constitutional Convention adopted the long and short haul section at its session closing April 11, 1891. At the time of its adoption into our Constitution, that section had been construed by two United States Circuit Courts and by the Interstate Commerce Commission, it being held that "substantially similar circumstances and conditions" did not mean solely the cost of carriage, but included also real competition, which the carrier might meet by reduction of rates to the competitive point, without making application to the Commission for authority. I attach little importance to the extracts given in the arguments from the Constitutional Convention debates as a means of ascertaining the intent of the provisions adopted; but in this case those extracts show that the attention of the convention was

Louisville & Nashville Railroad Co. v. Commonwealth.

called to the fact that under the Interstate Commerce Act a less charge for the longer haul was permitted when there was river competition at the more distant point. Under the well-settled rule of construction, the convention must be assumed to have had those constructions in mind when they adopted the section. Those constructions have been followed with strict uniformity in this country, to say nothing of the English authorities, the cases adversely decided having been reversed, with an apparent exception in the Social Circle case. That case was decided by the Commission upon the ground, in substance, that there was no competition. The circuit court dismissed the bill on the ground that the transportation for the two hauls was not over the same line. The Circuit Court of Appeals reversed the circuit court without delivering an opinion, and the Supreme Court (162 U. S. 184) [16 Sup. Ct. 700], held the decision of the question unnecessary, and declined to decide it.

In the case at bar it was shown that there was a substantial difference in the mileage cost of transportation of coal from Pittsburg, Ky., to Louisville, as compared with its transportation to Lebanon, for the reason that the greater volume of traffic in coal and other freight to Louisville made it possible to haul the Louisville freight in through trains, loaded to their full capacity, and without delay, while the traffic to Lebanon, by reason of its smaller volume, was necessarily transported in local trains, which is more expensive. It was also shown that the coal destined to Elizabethtown could be handled in the through trains as far as Lebanon Junction, which was the end of a division, and only twelve miles from Elizabethtown. The appellant company was not permitted to prove that the transportation of coal from Pittsburg and all the mining section of

Southeastern Kentucky to Louisville was not only affected, but controlled, by competition at the latter point, which did not exist at all at Lebanon. This competition was from West Virginia and Pennsylvania coal brought in barges down the Ohio to Louisville,—by the cheapest known method of transportation. The cheapness of its transportation gave Pennsylvania and West Virginia coal control of the Louisville market, and no other coal could be sold there unless the transportation rates were made so low as to enable it to compete with the coal from those States. Neither the Southeastern nor Southwestern Kentucky coal fields could reach the Louisville market at all but for the very low rates of transportation given to Louisville over the Kentucky railroads; and, if those rates can not be given, Louisville must depend entirely for coal upon West Virginia and Pennsylvania, or upon the mines of other States which, under the Interstate Commerce Act, can obtain low through rates to competitive points across this State. No injustice from the low through rates to Louisville resulted to Lebanon or other intermediate points, for the rates to those points would have been the same, and the cost of coal probably higher, if the Southeastern Kentucky coal could not have been carried to Louisville. The majority opinion is, in effect, that cost of transportation is the only circumstance or condition that can be considered. If that be so, it is strange that more apt words were not used in the Constitution. The words used are certainly susceptible of a far wider significance. In my view, the section quoted left the railroads in the same condition, and with the same rights, as before its adoption, except in so far as something is expressly forbidden to be done. As said by Judge Jackson (then circuit judge) in a case afterwards affirmed by the Supreme Court, and twice

subsequently quoted with approval (162 U. S. 184, 197), [16 Sup. Ct. 700, 705]: "Subject to the two leading prohibitions that their charges shall not be unjust and unreasonable and that they shall not unjustly discriminate so as to give undue preference or advantage or subject to undue preference or disadvantage persons or traffic similarly circumstanced, *the act to regulate commerce leaves common carriers where they were at common law, free to make special contracts looking to the increase of their business, to classify their traffic, to adjust and apportion their rates so as to meet the necessities of commerce, and generally to manage their important interests upon the same principles which are recognized as sound and adopted in other trades and pursuits.*" Interstate Commerce Commission v. Baltimore & O. R. Co., 43 Fed. 37. In the case of Missouri Pac. Ry. Co. v. Texas & P. Ry. Co., 31 Fed. 862, it was said: "Nor can it well be denied that, as between the short and long haul, competition may exist to that extent that what would otherwise be similar circumstances and conditions will be dissimilar circumstances and conditions." In *Ex parte* Koehler, 31 Fed. Rep., 315, the court said: "Freight carried to or from a competitive point is always carried under 'substantially *dis*similar circumstances and conditions' from that carried to or from non-competitive points. In the latter case the railway makes its own rates, and there is no good reason why it should be allowed to charge less for a long haul than a short one. When each haul is made from or to a noncompetitive point, the effect of such discrimination is to build up one place at the expense of the other. Such action is willfully unjust, and has no justification or excuse in exigencies or conditions of the business of the corporation. In the former case the circumstances were altogether different. The

power of the corporation to make a rate is limited by the necessities of the situation. Competition controls the charge. It must take what it can get, or, as was said in *Ex parte* Koehler, 'abandon the field, and let its roads go to rust.'" In Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed. Rep., 295, the court said: "If the circumstances and conditions are not substantially similar, the prohibition imposed by the statute does not apply at all.   *   *   *   The common carrier can not be required to ignore or overcome existing differences in the transportation facilities of different localities, created, not by its own arbitrary action, but by nature, or by enterprises beyond its control." In the case of Behlmer v. L. & N. R. Co., *et al.*, 71 Fed. Rep., 835, decided by the United States Court for the district of South Carolina, January 22, 1896, the court quoted from Judge Cooley (*In re* L. & N. R. Co., 1 Interstate Commerce Com. R. 57), as follows: "'The charging or receiving greater compensation for the shorter than for the longer haul is sure to be forbidden only where both are under substantially the same circumstances and conditions. And therefore, if in any case the carrier, without first obtaining an order of relief, shall depart from the general rule, its so doing will not alone convict it of illegality since, if the circumstances and conditions of the two hauls are dissimilar, the statute is not violated.' This is quoted with approbation by the United States Circuit Court, Southern district of California. Interstate Commerce Commission v. Atchison, T. & S. F. R. Co., 50 Fed., 295. When, then, may the circumstances and conditions of the two hauls be said to be dissimilar? Judge Cooley, in the same case, answers this question: 'Among other things, in cases where the circumstances and conditions of the traffic were affected by the element of competition, and where excep-

tions might be a necessity if the competition were to continue. And water competition was, beyond doubt, especially in view.' \* \* \* The Interstate Commerce Law was intended to promote trade. Such a construction as is now sought would destroy competition, the life of trade." And see Interstate Commerce Commission v. Alabama Midland Ry. Co., 69 Fed. 227; *Id.* [21 C. C. A. 51], 74 Fed. 715. The doctrine of these cases has been followed by the Supreme Court of the United States in the recent case of Interstate Commerce Commission v. Alabama Midland Ry. Co. (decided November 8, 1897) [18 Sup. Ct., 45]. Said the court in that case: "The competition may in some cases be such as, having due regard to the interests of the public and of the carrier, ought justly to have effect upon the rates, and in such cases there is no absolute rule which prevents the Commission *or the courts* from taking that matter into consideration." The Supreme Court expressly states, the conclusion that in complying with the provisions of the third and *fourth* sections of the act, *competition which affects rates is one of the matters to be considered.* The court further holds that where the circumstances and conditions of the long haul and short haul are substantially dissimilar, there is no necessity for the railroad company to apply to the Commission for authority to charge less for the long haul than for the short haul. Of course, whether actual competition exists is a question of fact depending on the matter proved in each case.

It is legitimate to consider a question of state policy as tending to show what was intended by a law, whether a provision of the organic law or a statute. Not that we should decide a case upon what we think the proper policy to pursue, but we may consider the policy which the lawgivers had in view as indicating what is the meaning of

their enactment. Surely, the framers of our Constitution did not intend to cripple or destroy a growing industry of the State. But the construction by the Supreme Court of the Interstate Commerce Act, which is the same which was given it at the time it was copied into our Constitution, and the construction now given to our Constitution by the majority opinion—directly the reverse of that which prevailed when the instrument was adopted,—work together to accomplish that end. Under the law as laid down by the Supreme Court, it is perfectly lawful for the appellant company, transporting interstate commerce, in order to meet the Ohio river competition at Louisville, to carry coal from Jellico, Tenn., to Louisville at a lower rate than it charges from Jellico, Tenn., to Lebanon, Ky. Under the majority opinion, it can not carry coal from Jellico, Ky., to Louisville at a less rate than it charges to Lebanon. If, therefore, it be true, as claimed, that the low through rate given to the competitive point is not sufficient to pay the cost of transportation, taking into consideration the fixed charges of the railroad,—interest on debt, official salaries, etc.,—it follows, not that the rate to Lebanon and other non-competitive points will be lowered, but that the through rate to the competitive point (Louisville) must be abandoned. The appellant will therefore be precluded from transporting Kentucky coal to the greatest market for it, and the mines shipping from Tennessee will have the benefit of Louisville as a market for their surplus, without any competition from Kentucky points. It appears that the Louisville market is almost indispensable to the successful working of the Kentucky mines. Giving access to that market by a through competitive rate works no injury to Lebanon, or to any other non-competitive point, but is a benefit in which Lebanon and other points indirectly share. To deprive the

Kentucky mines of that benefit will profit no one except the miners of other States, which will thereby secure a monopoly of the Louisville market. But, without considering the authorities, and without considering what the constitutional convention ought to have intended, and doubtless did intend, as a matter of policy, for the interests and industries of the State, the language of the enactment shows beyond question what was the object intended to be effected by this provision of the Constitution, and in what way was that object to be effected. It was made unlawful for the carrier to charge a greater compensation in the aggregate for transportation of passengers or property for a shorter than for a longer haul, over the same line, in the same direction, the shorter being included in the longer distance, if such transportation be made under substantially similar circumstances and conditions; but in the prohibition of a greater charge for a shorter distance it was provided that unconditional authority should not be given by implication to make as great a charge for a shorter as for a longer haul. It is therefore unlawful to charge as great a compensation for the shorter as for the longer haul, when the shipments are made under substantially similar circumstances and conditions. But even where the shipments are made under substantially similar circumstances and conditions, and where the carrier would, therefore, be confessedly guilty of violating the section if more were charged for the shorter than for the longer haul, on application to the Commission he may be authorized to make less charge for the longer haul, and the Commission may prescribe the extent to which he may be relieved from the operation of the section. When charged with a violation of the law, the carrier may answer—First, that the shipments were not made under substantially similar circum-

stances and conditions, but under circumstances and conditions materially different; or, second, confessing the circumstances and conditions to be substantially similar, the carrier may answer that application has been made to the Commission, and authority given by it to make the less charge for the longer distance. If the circumstances and conditions of shipment are materially dissimilar, the law does not apply at all, and there is no need to be relieved from its operation by the Commission. In this case the appellant admits that it has charged a greater sum for the shorter than the longer haul, but claims that the shipments have not been made under substantially similar circumstances and conditions; and has undertaken to make good its defense by showing—First, that the greater relative cost of the short haul makes a substantial dissimilarity; and, second, by offering to show that, by reason of competition from the Ohio river and from other railroads at Louisville, the shipments to that place have not been made under circumstances and conditions substantially similar to those which apply to a shipment to Lebanon. The testimony as to the cost of carriage is admittedly competent. The question presented here is whether proof that Louisville is a competitive point and Lebanon is not is competent to show that the circumstances and conditions are dissimilar.

I have said that, where the circumstances and conditions are dissimilar, the law, under its own terms, does not apply; but this is to be taken with some modification. Because a less charge is allowable under the act for a longer distance than for a shorter, on account of a less cost, it does not follow that the act loses its application entirely. The proper construction is that the less rate is allowable only as it is in proportion to the less cost. The cost might be very little less for the longer haul, and yet the charge made

Louisville & Nashville Railroad Co. v. Commonwealth.

be materially less, in which case the act would apply, because the less charge would not be justified by the less cost, and would clearly be the result of an unjust and arbitrary discrimination. And so, if it appear that a point is a competitive one, it does not follow from that fact alone that the law is not applicable. It must also appear that the less charge is induced solely by the competition, or by it and the fact that the cost is less; otherwise, under pretense of less cost of shipment and alleged competition, the carrier might charge the less price arbitrarily, and solely because of a desire to favor one locality over another. When the real purpose of the provision is considered, it seems plain that its enactment was not at all for the purpose of enforcing reasonable rates of transportation,—a matter which is provided for by other statutes and by the common law. That is clearly not the purpose of this enactment, because, if the charge in this case had been $1.56 from Pittsburgh to Louisville, the rate from Pittsburgh to Lebanon being $1.55, no one would have dreamed of invoking the aid of the provision under consideration to effect a reduction of the rate to Lebanon; nor could it be invoked if the charges had been $2 to Lebanon and $2.10 to Louisville. The enactment, therefore, does not prohibit the carrier imposing any rate it desires, so long as a less rate in the aggregate is not charged for the longer than for the shorter haul. Clearly, the only purpose was to prevent the carrier from arbitrarily favoring one locality over another. Complaint had been made that by discrimination in rates railroad companies would build up towns and cities where they, or their management, owned property, and to prevent such injustice and arbitrary discrimination this provision was enacted. The act was intended to prevent the building up of favored centers of population at the expense of the country at large.

But, if the less rate is fairly attributable to the fact that the cost of shipment for the longer distance is less than the cost of shipment to the nearer point, it follows that the difference in charge is not attributable to an arbitrary design to favor one locality at the expense of another; and so if the less rate for the longer haul is fairly attributable to competition in business, by water or otherwise. The act of arbitrarily favoring one locality over another is that act which it was the purpose of the constitutional convention and the Legislature to condemn. But, if the difference in charge is attributable to legitimate motives—that is, *any motive other than that condemned by the law*—then there is no room for the operation of the law, as that which it prohibits is not in fact done. To charge a carrier with a violation of this law is, in substance, to charge it with unjustly favoring one locality over another, by charging the favored place with a less rate, though the shipment is for a longer distance; and it is a legitimate answer to say that the less charge was made for another cause than the one the law prohibits, and therefore, unless the law is one to regulate the cost of shipment or competition in business, the causes named may be shown to have induced the less charge. It can hardly be claimed that the purpose of the law was to deprive Louisville of its low or competitive rate, or to attempt to place Lebanon in as favorable a geographical position as if it were situated on a large watercourse. I think, therefore, that, so long as Louisville is given only the benefit of it natural advantages, and only such low rates as flow from geographical position, it can not be said that there has been any arbitrary discrimination, to prevent which alone this law was adopted. Conceding the force and

vigor of the argument of the Chief Justice, I have been compelled to reach a different conclusion.

Judge Burnam concurs in this dissent.

On September 24th in response to a motion by sundry coal companies not parties to the record to file a supplemental petition for a rehearing, the following opinion of the court was delivered by Chief Justice Lewis.

The question here arising is on a motion made in the case of Louisville & Nashville Railroad Company v. Com. [46 S. W., 707] (decided at the last term of this court), to file what is described as a "supplemental petition for rehearing." The paper is signed by "Clifton J. Pratt, Counsel for the Coal Miners and Operators Named in the Accompanying Resolutions." As the resolutions were not permitted to be filed, and have been withdrawn, the persons for whom counsel appears can not be readily identified. However, we will assume that counsel has been regularly employed, and has the warrant of attorney to make the motion. The persons now seeking to file the supplemental petition are not parties to the litigation, nor did counsel for them, orally or by brief, argue the case before it was decided by this court. They do not come to now interfere with the litigation with consent of, or even upon notice to, either appellant or appellee. In our opinion, to permit the paper filed under the circumstances would be irregular, unjust to the real parties, and might be a precedent producing mischief and confusion. The petitioners have not the right to file the paper without the consent of the present parties to the litigation. Motion, for the present, overruled.

On a subsequent day of the term, by consent of the parties, the supplemental petition was permitted to be filed.

and thereupon the opinion of the court overruling same was on the 28th day of October delivered by C. J. Lewis.

Willing to consider all that can be said by those who believe themselves injuriously affected by the opinion in this case, we have, in addition to the petition for rehearing filed by appellant, as matter of right, permitted petitions filed in behalf of twenty or more Coal Companies. It is urged as reason for withdrawal of the opinion that, if Railroad Companies be not permitted to make special rates to competitive points, shipment of coal mined in this State must cease. Though an argument drawn from hardship or inconvenience is usually more appropriately addressed to lawmakers, it should, of course, have due weight with the court in determining the proper construction of a law the meaning of which is doubtful or obscure, but never so much as to induce a construction that is absurd, defeats the evident object in view, or involves stultification of those who made it. However, the argument in behalf of the Coal Companies, even if based upon entirely correct premise, is counterbalanced by the fact that, while special rates to competitive points may benefit a particular industry, removal of all restraint upon discrimination by Railroad Companies might be injurious to other industries and interests connected or identified with non-competitive points. Conceding the construction we have been, by a sense of duty, constrained to give section 218, will work injury to the coal industry of this State, the court is not authorized or permitted to afford relief by perverting the true meaning, and thereby defeating the manifest object of the section. The needed relief must be afforded, if at all, according to, and in the manner provided by, the law itself, which will be hereafter considered.

Counsel for appellant, after stating that it had for seven

years relied upon a construction of the long and short haul law settled, as they say, by the Interstate Commerce Commission and certain Circuit Courts of the United States, permit themselves to use this language: "The court of appeals now, at this late day, *propose* to repudiate that construction, and announce a construction which has never been announced by any tribunal with reference to the law from which our law was copied *verbatim.*" Counsel might without much effort have recollected that the Court of Appeals does never *propose*, but finally *decides*, the construction to be given such parts of the constitution and statutes of this State as need construction, and can not be foreclosed or bound by the views in regard thereto by any other tribunal. It is not true that framers of the constitution adopted section 218 with a view to a construction that had been put upon section 4 of the Interstate Commerce Act adverse to the one we have given section 218. At that time there had been no decision of the question by the Supreme Court of the United States, the only tribunal empowered to construe section 4 authoritatively and finally. It could, however, be said, if necessary, that, prior to the adoption of our constitution, it had been held by respectable English Courts that cost of service constitutes the difference of circumstances and conditions, in the meaning of their statute on the same subject, and similar in terms to section 218. The language of section 218 plainly shows it was made part of the constitution for the definite purpose of surely inhibiting Railroad Companies doing something they had previously done at will and discretion; that is, charging and receiving greater compensation in the aggregate for transportation of passengers and property the shorter than the longer distance. But if competition

[17]

at particular localities in the business of transportation, or other circumstances or conditions influencing the common carrier, not affecting the general public, be held by this court a sufficient reason or excuse for discrimination, Railroad Companies may, without legal restraint or interference, continue to do precisely what they did before section 218 was adopted, and it becomes a dead letter. In order to give meaning and effect to that section, cost of service must be held to alone constitute the difference of circumstances and conditions which will authorize greater aggregate compensation to be charged or received for the shorter than longer distance of the same line of road; and as, only to the extent of difference in the actual cost of transportation, a difference of aggregate compensation may be rightfully charged or received, the general public, as well as the carrier, is affected thereby. As counsel for appellant do not show or attempt to show in what manner railroad companies would or could be restrained or prevented from charging at will greater aggregate compensation for the shorter than longer distance, nor what possible purpose section 218 would or could serve, if the construction they contend for be accepted, we need not consider their petition for rehearing further.

It is argued by counsel for Coal Companies that the court has and should exercise jurisdiction to revise an order of the Railroad Commission refusing an application to authorize a common carrier, in special cases, to charge less aggregate compensation for the longer than shorter distance of the same line of road. Unquestionably, framers of the Constitution contemplated probable existence of exceptional circumstances and conditions working hardship or injustice to the Railroad Company, as well as particular industries or interests, and therefore recognized the justice

and necessity of authorizing special rates to be given to competitive points in special cases. But the Constitution does not contain, nor would it have been practicable to put in it, provisions applicable to every state of case that might arise. The Railroad Commission was therefore created to meet the emergency, and was intended to be invested with full power to authorize or not, in special cases, less compensation to be charged for the longer than shorter distance, and to prescribe from time to time the extent to which the common carrier may be relieved from operation of the section. In our opinion, the court has not jurisdiction to either compel the Railroad Commission, upon application of the common carrier or those interested in particular industries or callings, to suspend or relax operation of section 218, or, upon application of individuals or corporations feeling aggrieved, *to prohibit* such suspension or relaxation, in special cases. While the commission is thus and to that extent free from judicial interposition, it can not, of course, nullify, or except in special cases at all suspend, operation of section 218; and, though the Railroad Commission be invested with this unusual power, it must be treated as a constitutional power, with which the court can not interfere. The petition for rehearing is overruled.