CASE 78—INDICTMENT FOR VIOLATING LONG AND SHORT
HAUL STATUTE—MAY 20.

|106 633
|114 797
|j114 808

# Louisville & Nashville Railroad Company v. Commonwealth.

### APPEAL FROM MARION CIRCUIT COURT.

CONSTITUTIONAL LAW—LONG AND SHORT HAUL—COMPETITION AT
. TERMINUS OF LONG HAUL.—Competition at the terminus of the
long haul does not prevent the carriage from being "under sub-
stantially similar circumstances and conditions" within the
meaning of that language in section 218 of the Constitution.
(The principles of the case L. & N. R. R. Co. v. Com., reported
in 104, Ky., 226, reaffirmed.)

WILLIAM LINDSAY AND WALKER D. HINES FOR THE APPELLANT.
(H. W. BRUCE AND E. W. HINES OF COUNSEL.)

1. Cost of transportation can not be ascertained or serve as the
   basis for making rates; they are necessarily controlled and de-
   termined by commercial conditions. *In re* L. & N. R. R. Co.,
   1 I. C. C. Rep., 63; Foot v. Railroad Co., N. Y. Ry. Com. Rep.,
   1884, vol. 1, p. 104; s. c. 21 Am. & Eng. R. R. Cases, 63; Int.
   Com. Com. v. B. & O. R. Co., 43 Fed. Rep., 37; C., N. O. & T.
   P. Ry. v. Int. Com. Com., 162 U. S., 184; T. & P. Ry. v. Int.
   Com. Com., 162 U. S., 197.
2. The Kentucky long and short haul law, as formerly construed
   by a majority of this court, amounts to an arbitrary and sweep-
   ing prohibition of legitimate traffic.
3. The competitive traffic involved in this case is perfectly legiti-
   mate, and any arbitrary interference with the right of the rail-
   road company to engage in it can not be valid as an exercise of
   the police power. Tiedeman's Lim. of Police Power, pp. 45,
   184, 194, 196, 197, 198 and 593; Black's Con. Law, p. 73; Mugler
   v. Kansas, 123 U. S., 623; Lawton v. Steele, 152 U. S., 133; Burn-
   side v. Lincoln County Court, 86 Ky., 423; Plessy v. Ferguson,
   163 U. S., 537; Ohio Valley Ry.'s Receiver v. Lander, 20 Ky.
   Law Rep., 913.
4. Such an arbitrary interference with the railroad company's right
   to engage in a legitimate traffic deprives it of its property
   without due process of law, and denies it the equal protection of

the law. *In re* Jacob's 98 N. Y., 98; C. M. & St. P. Ry. Co. v. Minnesota, 134 U. S., 418; *Ex parte* Koehler, 23 Fed. Rep., 529.

5. And likewise impairs the obligation of the appellant's charter contract. Cooley's Con. Lim. (5th ed.), p. 712.

6. And likewise interferes unlawfully with interstate commerce.

7. The proper construction of the long and short haul law discussed.

(a) Construed according to the reasonable and natural meaning of the words used, and giving effect to every part of the section, it can not prohibit charging more for a short than for a long haul, where the less charge for the long haul is necessitated by controlling and unavoidable competition.

(b) This construction is demanded by the fact that it was the settled construction of the same language in the Interstate Commerce Act at the time that identical language was adopted as the law of Kentucky.

*In re* L. & N. R. R. Co., 1 I. C. C. Rep., 31; Mo. Pac. Ry. Co. v. T. & P. Ry. Co., 31 Fed. Rep., 862; *Ex parte* Koehler, 31 Fed. Rep., 315; Com. v. Bush, 2 Duv., 264; Int. Com. Com. v. Ala. Midland Ry. Co., 168 U. S., 144.

(c) This construction is required by the obvious purposes of the law, and is the only construction which would accomplish all of those purposes.

(d) This construction is also required on account of the injurious consequences which would result from any other construction.

Yick Wo v. Hopkins, 118 U. S., 356; City of Baltimore v. Radecke, 49 Md., 217.

8. The construction thus contended for will give the law its full effect, and will wholly prevent the unjust discriminations it was intended to reach.

9. The construction contended for has been repeatedly adopted by the Federal Courts, including the Supreme Court, and the contrary construction has no authority to support it. M. P. Ry. Co. v. T. & P. Ry. Co., 31 Fed. Rep., 820; *Ex parte* Koehler, 31 Fed. Rep., 315; Int. Com. Com., v. A. T. & S. F. R. Co., 50 Fed. Rep., 295; Int. Com. Com. v. Ala Midland Ry. Co., 69 Fed. Rep., 227; s. c. in Circuit Court of Appeals, 71 Fed. Rep., 715; Int. Com. Com. v. L. & N. R. R. Co., 73 Fed. Rep., 409; T. & P. Ry. Co. v. Int. Com. Com., 162 U. S., 197; Int. Com. Com. v. Ala. Mid. Ry. Co., 168 U. S., 144; Brewer v. Cent. of Ga. Ry. Co., 84 Fed. Rep., 258; Int. Com. Com. v. W. & A. R. Co., 88 Fed. Rep., 186; Int. Com. Com. v. W. & A. R. Co., decided by U. S. Circuit Court of Appeals for 5th District at its November term, 1898, but not yet reported.

Louisville & Nashville Railroad Company v. Commonwealth.

W. S. TAYLOR, ATTORNEY-GENERAL, H. W. RIVES AND M. H. THATCHER FOR THE APPELLEE.

(Briefs not in the record.)

·(From the judgment in this case, a writ of error was prosecuted to the Supreme Court of the United States and at the October term of 1901 the judgment herein was affirmed.)

JUDGE HOBSON DELIVERED THE OPINION OF THE COURT.

Section 218 of the Constitution is as follows: "It shall be unlawful for any person or corporation owning or operating a railroad in this State, or any common carrier, to charge or receive any greater compensation in the aggregate for the transportation of passengers or of property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier, or person, or corporation owning or operating a railroad in this State to receive as great compensation for a shorter as for a longer distance: *Provided,* that upon application to the railroad commission such common carrier, or person or corporation owning or operating a railroad in this State, may, in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances, for the transportation of passengers or property; and the commission may, from time to time, prescribe the extent to which such common carrier, or person, or corporation, owning or operating a railroad in this State may be relieved from the operation of this section."

To carry the above into effect, the General Assembly enacted the following statute:

"If any person owning or operating a railroad in this State, or any common carrier, shall charge of receive any

greater compensation in the aggregate for the transportation of passengers or property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line in the same direction, the shorter being included within the longer distance, such person shall, for each offense, be guilty of a misdemeanor, and fined not less than one hundred nor more than five hundred dollars, to be recovered by indictment in the Franklin Circuit Court, or the circuit court of any county into or through which the railroad or common carrier, so violating, runs or carries on its business. Upon complaint made to the Railroad Commission that any railroad or common carrier has violated the provisions of this section, it shall be the duty of the Commission to investigate the grounds of complaint, and if, after such investigation, the Commission deems it proper to exonerate the railroad or common carrier from the operation of the provisions of this section, an order to that effect shall be made by the Commission, and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the Commission; and after such order, the railroad or common carrier shall not be prosecuted or fined on account of the complaint made. If the Commission, after investigation, fails to exonerate the railroad or common carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the Commission, and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the Commission; and after such order it shall be the duty of the Commission to furnish a statement of the facts, together with a copy of its order, to the grand jury of any county, the

circuit court of which has jurisdiction, in order that the railroad or common carrier may be indicted for the offense; and the Commission shall use proper efforts to see that such company or common carrier is indicted and prosecuted." (Kentucky Statutes, section 820.)

Appellant transported coal from Altamont to Louisville at $1 per ton, and to Elizabethtown at $1.30 per ton, while it charged $1.55 per ton from Altamont to Lebanon, an intermediate station on its line of road. Complaint being made to the Railroad Commission, it investigated the matter, and made an order in writing, declining to exonerate appellant from the operation of the provisions of the section above quoted; and thereafter, at the suggestion of the Commission, appellant was indicted in the Marion Circuit Court, as provided in the statute. The case was tried, and, appellant having been adjudged guilty, it prosecutes this appeal to reverse the judgment imposing a fine upon it of $300.

Appellant justified the difference of the rate on the ground that at Louisville the coal hauled from Altamont came in competition with the coal brought down the Ohio river on boats, and that at Elizabethtown it came in competition with the Western Kentucky coal brought there by the Illinois Central Railroad. It insists that these rates could be made no higher on account of this competition, and that the rates to non-competitive points like Lebanon were reasonable, and were unaffected by the reductions referred to which were necessary for the coal to be handled in those markets at all. The evidence offered by it to sustain this contention was excluded by the court below on the trial on the ground that competition is not one of the circumstances or conditions exempting the railroad from the operation of the section of the Constitution above

quoted.    It is earnestly argued for appellant that the transportation is not under substantially similar circumstances and conditions when competition exists at one point and not at another and we are referred to numerous decisions of the Federal courts so holding.

On the other hand, it is contended for the State that to adopt this construction is to emasculate the section, and deprive it of all practical operation and effect.

The precise question thus presented was determined by this court in the case of L. & N. R. R. Co. v. Com., 104 Ky., 226 [46 S. W., 707; 47 S. W., 210, 598], where the construction of the section adopted by appellee was sustained.    We are urged to overrule that case; but it was fully considered, and then reconsidered by the whole court, and we are disinclined, with substantially no new light upon the question, to set aside the conclusion of the court reached then after so mature deliberation.

It is insisted for appellant that this construction of the section makes it an arbitrary interference with the right of appellant to engage in competitive traffic, depriving it of its property without due process of law, denying it the equal protection of the law, impairing the obligation of its charter contract, and unlawfully interfering with interstate commerce.    All of these objections may be considered together.

A railroad is only an improved modern highway.    It must, of necessity, be subject to public control, like its predecessor, the turnpike; for the industry and commerce of the country are dependent upon it.    To hold that only railroad men understand rates, or that they shall be allowed alone to fix the rates, and that no tribunal can review their decision as to what rates are reasonable, is to put in their hands a power dangerous to the welfare of the

community, and utterly out of keeping with the doctrine that they are public agencies, and so have the right to appropriate to their use the property of the citizen against his consent upon making him just compensation. It has been notorious that railroad managers have, by discrimination in favor of certain shippers or a given locality, brought ruin to others. It was the aim of the Constitution to require the railroads in the State to treat all localities fairly and with equality; but, as differences of conditions ever varying would constantly arise, it prescribed no fixed rule, but created a tribunal to act as umpire between the railroads and the people, and decide when and to what extent a greater charge might be made for a short than for a long haul under like circumstances and conditions, with full power in special cases "from time to time [to] prescribe the extent to which such common carrier, or person, or corporation owning or operating a railroad in this State may be relieved from the operations of this section." It is not confined in its power to each shipment as it may be made, but may prescribe, from time to time, a suspension of the section on freight of a given character between given points, as the public interest and the ends of justice may require.

We are unable to see that as yet any right of appellant has been invaded, or that it has any just cause of complaint. If it be true that the public interests require the discrimination in rates shown in this case, and that no injustice has really been done, it may be that upon presentation of the facts to the Railroad Commission it would allow the rates to stand, and make an order exonerating appellant from the operation of the section.

It does not appear that appellant has presented its case to the Railroad Commission, and we infer that it has not

done so from the fact that this case seems to have been specially prepared to present these questions here, and there is no reference to a similar effort before the Railroad Commission. Although the Commission refused to exonerate appellant on the evidence it had before it, it does not follow that it would still refuse to do so if proper evidence was offered. It represents the whole State, including the railroad and its stockholders as well as other people, and has always shown a laudable zeal for the interest of the entire State. The power to determine this matter must be vested somewhere, and, the Constitution having created a special tribunal for this purpose, we can not see that its provisions are subject to any of the objections raised by appellant.

If the railroad companies are not to be allowed to have exclusive control over the rates for the long and short haul, and the sole right to determine when competition exists, and to what extent, special rates, for this reason, may be given, we do not see any more just arrangement that can be made than the selection of an impartial tribunal to hear and determine the matter. Since Adam's first-born dyed his hands in his brother's blood, self-interests have warped and controlled human judgment. However honest and faithful railroad managers may be, they necessarily look first to the interests of those they serve; and no principle of constitutional law is violated when the State, which has created these agencies for the public service, creates an impartial tribunal to prevent their great powers from being used to build up certain favored ones at the expense of others.

Counsel for appellant in effect concede in their brief that the State may prevent unjust discrimination, and that if appellant's rates are judicially determined not to be reasonable, it may then be punished.

Their argument, in effect, is that appellant may be pun-
ished under the section of the Constitution, although its
rates are reasonable, and the discrimination is made nec-
essary by competition in trade over which it has no control.
This assumes that the Railroad Commission will allow the
interests of the State to suffer from an unjust rule, or that
it will do injustice to appellee.   We can not see that a jury
is better qualified to pass on the reasonableness of a rate
than a skilled commission, nor is it by any means sure that
a trial by jury would be in practice any more satisfactory
to appellee.   It is true, the Commission may make mis-
takes; but we see no reason for the apprehension that
an impartial tribunal will err more to the prejudice
of one of the parties to a controversy than that
party might himself to the prejudice of the other, if the
solution of the question were left to him alone.   It may be
the Commission, on the complaint referred to, from the evi-
dence before it, concluded that the rate to Louisville was
as large as it should be to afford a fair compensation for
the haul to Lebanon, or that the competition with another
railroad in the State did not justify the discrimination in
favor of Elizabethtown.   If it erred in any of its conclu-
sions, it has power, from time to time, on further evidence,
and a fuller hearing, to make such orders as the ends of
justice may require; and, if the State may control the mat-
ter at all, we can not see that the plan proposed is unfair,
or in excess of the rightful police power of the State.

It is urged that this construction of the Constitution
will allow coal and other freights from without the State
to be shipped cheaper than they can be hauled to the same
point if shipped within the State, as under the interstate
commerce act, competition is held to exclude the carrier
from the long and short haul clause.   The Constitutional

[ 41 ]

Convention no doubt had just such considerations in mind when it gave the Railroad Commission the plenary powers conferred on it as above explained. It is the duty, and no doubt will be the pleasure of the Railroad Commission to so regulate the matter that no injustice shall be done any industry in the State, and the true interests of the Commonwealth as a whole shall be promoted.

The Interstate Commerce Act, under the Construction that has been given it, has proved a sore disappointment to many of its friends. The subject is new. That act was an experiment. The provision of our Constitution is an experiment in another direction. The subject is one of great difficulty, and, if experience does not find our provision to bring just results, it may lead to that system which will do justice to all, and bring these intricate questions to a just and fair settlement. Judgment affirmed.

CHIEF JUSTICE HAZELRIGG AND JUDGES DuRELLE AND BURNAM DISSENTING.

CHIEF JUSTICE HAZELRIGG'S DISSENTING OPINION.

It is not disputed that, at the time of the incorporation of the long and short haul clause of the act of Congress into the Kentucky Constitution of 1891, the settled construction of the clause by the tribunals charged with its enforcement, as well as the construction of the same clause by the federal courts theretofore called on to construe it, was the same as was subsequently adopted by the Supreme Court of the United States. When this court, therefore, came to construe the clause, it had before it the decision of the question at issue by the Supreme Court of the United States and the decisions of numerous federal courts, all agreeing that competition was a controlling factor in

the adjustment and regulation of rates, and that its pres-
ence and influence conspired to make the "circumstances
and conditions" of shipments substantially dissimilar from
shipments where such competition did not exist.   I insist-
ed then, as I do now, that it ought to have been assumed
as indisputable that, when the framers of our Constitution
took the pains to copy the federal law on the subject in-
volved, they expected the same construction to be put on
the borrowed language as had theretofore been put on the
law from which they borrowed.   Indeed, the ordinary rules
of construction required the adoption of the views of those
courts which had already construed the law when we in-
corporated it into our law.    This court has again and
again announced the principle that, by borrowing the law
from a given source, we borrow its construction as well.
Instead of departing from this settled rule, there are
controlling and peculiar reasons affecting the regulation
of common carriers why the principle adverted to should
be adhered to.   The carriers to whom the law was to be
applied were in the main interstate carriers, and were mak-
ing their shipments into and out of the State under traffic
rates adjusted to meet the construction of the long and
short haul clause by the federal courts.

Our lawmakers must have foreseen that the same law
should control all classes of shipments, else there was
danger of gross discrimination against the interests of
our own people.   The question concretely put before them
was, shall the mine owners of Jellico, Tenn., have access
to the trade centers of the State of Kentucky at the cheap
competition rate, while the output of mines at Jellico,
Ky., a few hundred yards off, shall be limited to the local
demand, and be shut out of the larger market, because of
the higher and non-competitive rates?   The answer was

such as it ought to have been. The lawmakers agreed to adopt even the ambiguous and awkward phraseology of the federal (the interstate) law, to the end that, whatever might be the construction of the law, at least it must, according to well-settled rules, be the same construction, whether applied by the State or by the federal tribunals. I venture to say that it never entered the minds of our lawmakers that this law would receive a construction radically different from the construction put on it by the federal courts, certainly not if this different construction must result to the disadvantage of intrastate traffic.

It is not amiss to say here that a departure from this well-settled rule has already inflicted irreparable loss on the coal interests of the State in the locality where the question has arisen. And the construction will continue to embarrass and delay development of the great forests and mines of Eastern and Southeastern Kentucky. Aside from all this, there is a more serious question involved.

Under the law as construed by the majority opinion, the company must (1) increase its rates from the Kentucky mines to Louisville beyond the rates fixed to Lebanon, or (2) decrease the rates from the mines to Lebanon below those charged to Louisville, or (3) depend upon the arbitrary will of the railroad commissioners to adjust the rates as to them may seem proper. If the first alternative is forced on the company, the result is a prohibition of the carriage of coal from the mines to Louisville, as none could be sold there. This result would be confessedly an unwarrantable interference with the reasonable use of the company's property.

If the second, then the company is forced to furnish the use of its property at a price below that which is reasonable, and at rates below those which afford a fair

and just return on the capital invested.  This is true, because it is to be assumed that the rates from the mines to Lebanon are already reasonable and just.  The proof offered is conclusive on this point.

The only remaining refuge of the company is to submit its management to the arbitrary will of the Commissioners.

And this, say this court, in effect, is better than to leave the matter at issue to a jury.  I think the court overlooks the fact that a jury must act within the rules of law.  A trial before a jury is had under the ordinary forms of law.  The judge and jury are at least controlled and bound by legal principles and precedents.

I think, in the first place, neither Congress nor the constitutional convention ever intended to vest their respective boards of commissioners with such extraordinay powers, and, in the second place, I think the law so construed would result in an unwarrantable interference with the reasonable use of the appellants' property, and to an extent not permissible under either the State or Federal Constitution.

In the recent case of Lake Shore & Michigan S. Railway Co. v. Smith (April 17, 1899) [19 Sup. Ct., 565], the principle is emphasized that the power of the State, in the matter of regulating railroads, is to be exercised in subordination to the Federal Constitution, and that railway companies have a constitutional right to manage their own properties, subject only to the exercise by the State of a reasonable supervision.  To say that as yet the company is not hurt, because the Commission will "do right," is but begging the question.  Such a construction results in the substitution of a tribunal to try the property rights of the company which is restricted by no legal safeguards.

The statute so construed is clearly in conflict with the Constitution of the United States.

In Chi., M. & St. P. Ry. Co. v. Minnesota, 134 U. S., 418 [10 Sup. Ct., 462, 702], the Supreme Court said: "This being the construction of the statute by which we are bound in considering the present case, we are of opinion that, so construed, it conflicts with the Constitution of the United States in the particulars complained of by the railroad company. It deprives the company of its right to a judicial investigation by due process of law, under the forms and with the machinery provided by the wisdom of successive ages for the investigation, judicially, of the truth of a matter in controversy, and substitutes therefor, as an absolute finality, the action of a railroad commission, which, in view of the powers conceded to it by the State court, can not be regarded as clothed with judicial functions or possessing the machinery of a court of justice."

Without elaboration, I respectfully dissent from the opinion of the majority, and refer to the former dissenting opinion in the same matter as indicating my view in detail of the real meaning and purpose of the statute.

JUDGES BURNAM AND DuRELLE CONCUR.