CASE 90—THE LOUISVILLE & NASHVILLE R. R. Co. WAS INDICTED AND CONVICTED OF UNLAWFUL DISCRIMINATION IN FREIGHT CHARGES UNDER THE "LONG AND SHORT HAUL" STATUTE.—FEB. 11.

# Louisville & N. R. R. Co. v. Commonwealth.

APPPEAL FROM MARION CIRCUIT COURT.

DEFENDANT CONVICTED AND APPEALS.   REVERSED.

CARRIERS—UNLAWFUL DISCRIMINATION—INDICTMENT—RAILROAD COMMISSION—FAILURE TO EXONERATE IN SPECIAL CASE—EFFECT ON FUTURE SHIPMENTS.

Held:   1. Const. section 218, makes it unlawful for a common carrier to charge more in the aggregate for the transportation of passengers or property of like kind, "under substantially similiar circumstances and conditions," for a shorter than a longer distance over the same line, in the same direction, etc., provided that, on application to the railroad commission, the carrier may, on investigation, be authorized to do otherwise, and the commission may from time to time prescribe the extent to which the section may be ·relieved against.   Kentucky Statutes, section 820, provides the punishment for such unlawful discrimination, and the procedure therefor, and enacts that, on complaint to the commission, it shall investigate the grounds thereof, and make an order either exonerating or failing to exonerate the carrier, and shall furnish a copy of the latter, with a statement of. facts, to any grand jury having jurisdiction, in order that the carrier may be indicted for the offense; and shall use proper efforts to secure indictment and prosecution.   HELD, that an order failing to exonerate a carrier,

and recommending its indictment in specially named cases, could not be made the basis of an indictment for unlawful discrimination in subsequent shipments.

W. C. McCHORD, FOR APPELLANT.

### POINTS AND CITATION.

1. An indictment can not be properly found against a carrier, for violating the Constitution and statutes prohibiting a carrier charging more for a short than a long haul, until after the circumstances and conditions incident to such transportation have been investigated by the railroad commission, and a recommendation to the grand jury that indictments be returned for offenses, which the commission refuses to exonerate. Constitution, sec. 218; Kentucky Statutes, sec. 820; L. & N. R. R. Co. v. Commonwealth, 20 Ky. Law Rep., 1386; L. & N. R. R. Co. v. Commonwealth, 21 Ky. Law Rep., 235; I. C. R. R. Co. v. Commonwealth, 23 Ky. Law Rep., 1159.

2. The railroad commission has control of all prosecutions by indictment for violating the long and short haul provisions of the Constitution and statutes, and may exonerate the carrier from the offense by a reconsideration of the circumstances and conditions under which the transportation was made, and if, after an indictment has been returned, the commission finds the circumstances and conditions of the long and short haul dissimilar and exonerates the carrier from the offense charged in the indictment the prosecution must fail. L. & N. R. R. Co., 21 Ky. Law Rep., 235.

3. Before there can be a conviction under an indictment charging that defendant had violated the long and short haul law the Commonwealth must prove that the short haul was over the same line of railroad and that the short haul was included in the long haul. L. & N. R. R. Co. v. Walker, 23 Ky. Law Rep., 433.

4. Before there can be a conviction under the statute, the proof must show that the carrier charged and received less for transportation to the longer points named in the indictment as the longer distance than was charged and received for shipment to the point named in the indictment as the shorter distance.

5. A witness by whom it is attempted to prove what a railroad rate tariff sheet showed, should not be allowed to tell what the tariff was, but the rate sheet, itself, is the best evidence of what it shows and should be read to, or by the jury and filed as part of the record; unless the paper is lost or can not be produced.

Louisville & N. R. R. Co. v. Commonwealth.

A paper purporting to be a certified copy of a lost record can not be read as evidence until after it has been supplied, as *required* by the *statutes*. Kentucky Statutes, secs. 1643, 3994 and 3995.

EDWARD W. HINES AND THOMAS B. HARRISON, JR., FOR APPELLANT.

1. The Commonwealth must prove the offense as alleged. Clark v. Com., 16 B. M., 211; Com v. Megowan, 1 Met., 368.

2. Evidences of other offenses is not admissible. Martin v. Com., 93 Ky., 189.

3. A recommendation of the commission to indict for all future offenses would not suffice, but even if that would be sufficient it is clear that there was no such recommendation in this case.

OPINION OF THE COURT BY JUDGE BARKER—REVERSING.

The appellant was indicted by the grand jury of the Marion circuit court, at its January term, 1899, for a violation of section 820 of the Kentucky Statutes, commonly known as the "Long and Short Haul Statute." It will not be necessary in this case to examine the indictment, further than to say that its allegations are sufficient, and that it contains, among other things, a statement that it was found upon the recommendation of the railroad commission. The case came on for trial in the Marion circuit court in 1902, and the only evidence introduced by the Commonwealth in support of the allegation that the indictment was found upon the recommendation of the railroad commission was a report of the commission to the Marion circuit court and grand jury, made in 1895, charging the appellant with violations of section 820 of the Kentucky Statutes, and recommending its indictment in some fifteen specially named cases, none of which was the case at bar. The appellant, at the close of the Commonwealth's testimony, moved the court for a peremptory instruction to the jury to find it not guilty. This motion

was overruled. The court then gave written instructions to the jury, and, the case having been submitted, a verdict of guilty was returned, and a penalty of $300 imposed upon appellant. The motion for a new trial having been overruled, the case is here on appeal.

The conclusion which we have reached regarding the law of this case makes it unnecessary to examine or discuss any other questions than such as are involved in the proposition as to whether or not the court erred in overruling appellant's motion for a peremptory instruction.

In order to obtain the meaning and intent of section 820 of the Kentucky Statutes, it is necessary to take a brief survey of the history of this enactment.

There had been much complaint, of long standing, throughout the Commonwealth, that the railroads were habitually engaged in the business of discriminating between localities in the matter of freight rates; that cities and communities were being pushed forward in the march of material progress by friendly discrimination on the part of the railroads, at the expense of other cities and communities, which were being retarded and repressed by unfriendly discriminating rates. Whether or not this was true, is immaterial. It was believed to be true, and this belief on the part of the people of the State was crystallized in section 218 of the Constitution, and in the subsequent enactment of section 820, providing a remedial procedure to carry into effect the provisions of the Constitution on this subject. But while there was ardent desire on the part of the people and their representatives to repress the offense of unjust discrimination by railroad corporations, there was also a wholesome fear of unjustly and wantonly injuring these great and necessary agencies of the material prosperity of the Commonwealth by hasty and ill-in-

formed zeal in the matter of applying the remedy to the supposed wrong. It was recognized that the subject of transportation in railroad business involves one of the most profound and abstruse problems with which railroad managers have to deal. It was seen that, with this problem, the average juryman, whether grand or petit, would be helpless and impotent; that he would neither have the trained power nor the necessary data to enable him to understand the difficult subject involved in the expression "substantially similar circumstances and conditions;" and that a jury organized in a community smarting under the exasperation of a supposed invidious discrimination of rates against it would be unable to take any but a narrow and sectional view of the acts from the effects of which they were suffering. Therefore it was deemed wise to take the whole subject out of the danger of sectional bias, and place it in the hands of a commission representing not one community, but the whole State—a commission which should be elected, in the aggregate, by all of the people of the Commonwealth, and which for this reason would represent the interest of the whole State, and not the interest of any single city or locality; a commission which would take into consideration the needs of the manufacturer, the miner, the lumberman and the railroads, as well as the interest of the people at large, and which would lift the subject out of the realm of sectionalism, and place it in the realm of commercial statesmanship. In order that the commission should do this, they were to be elected for a term of years, that they might have ample time to study all of the questions involved in their duty. They were given a salary adequate to warrant the devotion of their whole time to the questions of railroad management, and it was made the duty of every railroad corporation in the

State to make an annual report to them, embracing every
fact concerning the affairs of the corporation which were
presumed by the framers of the law to be necessary to a
proper understanding of the whole problem of regulating
the railroad corporations of the Commonwealth; and, for
fear that the statutory report required had overlooked
some data necessary or useful to this end, it
was provided that the corporations should answer
any other questions propounded to them by the
commissioners. The commissioners were invested
with the power to summon any person or per-
sons they pleased, and to examine them under oath touch-
ing any subject connected with the affairs of the operation
of a railroad in the State. It is impossible to read the
whole law, the substance of which is here sketched, with-
out being impressed with the fact that the commissioners
were to be prepared to grapple with problems which no
grand or petit jury of the Commonwealth could successfully
compass, and that the duty of making the investigation
which involved the exercise of all this knowledge, so labor-
iously acquired, lies at the very root of, and is precedent to,
an indictment by a grand jury for an offense which could
only be properly investigated by an intelligent and well-
informed commission. It would, indeed, be a vain and
useless thing to establish a railroad commission, to be elect-
ed by the people of the whole State; and put into their
hands all the data concerning railroads which the owners
and managers thereof possessed, if the problems to be
solved were such as an average jury would be competent
to grasp and understand. If there was nothing in the
problem but the respective distances of the localities, and
the respective rates charged thereto, the proposition would,
instead of being profound and abstruse, be reduced to the

simplicity of the equation that two plus two equals four. But there was recognized to be far more in the problem than the distances of the two localities from the point of shipment, and the respective rates imposed. The question of competition was to be considered, and was recognized as being involved in the problem of "substantially similar circumstances and conditions;" and this being a subject with which the commission could, and the jury could not, deal, it was required, as a condition precedent to an indictment in any particular case, that the commission should first decide whether or not the circumstances and conditions were substantially similar. If, after examination, this question was decided adversely to the railroad, then the remaining facts necessary to be established to constitute its guilt were peculiarly within the province of the jury. If this question was decided in favor of the railroad, then there was nothing for the jury to do in the premises.

In the case of the Illinois Central Railroad Company v. The Commonwealth, 23 R., 1159, 64 S. W., 975, it was held by this court that an investigation by the railroad commission was a condition precedent to an indictment by a grand jury for a violation of the provisions of section 820 of the Kentucky Statutes. In the case cited the court said: "In the construction of statutes, the cardinal aim of the court is to arrive at the intention of the Legislature. The court will presume that the Legislature meant something by all the provisions of the statute, and will endeavor to give them all a fair effect. If the Legislature had intended indictments to be found for each offense, regardless of action by the railroad commission, we see no reason why the section might not have stopped with the first sentence, defining the offense and providing for its punishment; for by the

next section (Kentucky Statutes, section 821) it is made
the duty of the commission 'to see that the laws relating
to all railroads, except street, are faithfully executed,' and
under this provision it would be the duty of the commis-
sion to see to violations of the preceding section. Not
only so, but it provided in section 820 that, if the com-
mission deems it proper to exonerate a carrier from the
operation of its provisions, an order to that effect shall be
made, and after such order the carrier shall not be prose-
cuted for that matter. To indict the carrier in the first
place without action by the railroad commission would be
to deprive it of all benefit of this provision. If the com-
mission had only power to pass on the same facts as the
grand jury, it might, perhaps, be maintained that the Leg-
islature intended to provide a cumulative remedy, and
that a preliminary hearing before the commission was not
essential. But such is not the fact." The court, then, af-
ter discussing various decisions of this court on kindred
propositions, goes on to say: "It will be observed that the
constitutional convention did not adopt a hard and fast
rule, making the charge of more for the short than for the
long haul unlawful, but expressly empowered the com-
mission to authorize the railroad to charge less
for longer than for shorter distances, and to pre-
scribe from time to time the extent to which the
carrier might be relieved from the operation of
the section. There were many industries in the State
whose interest required this. More than one coal famine
had occurred. The only security against a recurrence of this
trouble was our domestic coal, but this could not be avail-
able unless given lower rates, so that it could compete
in the market with the coal shipped by water If it could
not thus compete, it could not be relied on as a supply in

an emergency. The low rate in this case was given on coal shipped to Louisville, because it there came in competition with coal brought down the Ohio river. The railroad commission was the only tribunal authorized to relieve appellant from the operation of the section. No such power was vested in the courts. The question of competition could not be examined there, nor could it be shown that a proper case existed for exoneration from the section. The Legislature therefore provided for the preliminary hearing before the railroad commission, not as a cumulative remedy, but that it might determine whether the carrier should be exonerated or not; and therefore it was provided that, if the commission relieved the carrier from the operation of the section, no prosecution should be had on account of the matter complained of. It also further provided that, if the commission failed to exonerate the carrier, it should make an order in writing to that effect, and furnish 'a statement of the facts, together with a copy of its order, to the grand jury of any county, the circuit court of which has jurisdicton, in order that the railroad company or carrier may be indicted for the offense.' The requirement that the commission should furnish the grand jury a copy of its order, in order that the railroad company might be indicted for the offense, must be read in connection with the previous clause—that, if the company was exonerated, the railroad company should not be prosecuted. The plain meaning of the two together is that the railroad company may be indicted for the offense if not exonerated, and may not be indicted if it is exonerated, and the copy of the order of the commission refusing to exonerate it is required to be furnished to the grand jury in order that the company may be indicted." It is no answer to this reasoning to say that, four years before the indictment in question was found,

the commission had decided other cases under section 820, involving freight rates between the same localities, against the railroad, and recommended its indictment and punishment therefor.

The problem of competition in railroad traffic is an ever-varying one, and the decision of the commission at any given time could, of necessity, only determine the condition of the question at the time of its promulgation, and prior thereto. Of the future, unless they possessed the gift of prophecy, they could not determine. The same necessity for a thorough examination of the circumstances and conditions of competition would exist at any subsequent time as at the original investigation, unless we are to suppose that there are never any changes in the status of railroad competition. On the contrary, common experience teaches us that what would be a righteous decision on the question of competition of freights between localities at any given time might be iniquitously unjust at a subsequent time; and therefore it is impossible to suppose that the lawmaking power meant that the declaration of the commission in refusing to exonerate appellant from the provisions of section 820 at any given time was to act as a formal declaration of war on it, under which letters of marque and reprisal were to be issued and enforced by the grand jury along its line until such time as peace might be declared by a new edict of the commission. Such a conclusion would be crude and unscientific, and does violence to the plain letter of the statute.

Section 820 gives the remedy for violation of section 218 of the Constitution, and it comes within the familiar rule of construction that, when a statute gives a remedy, it is usually exclusive, or as said in The Illinois Central Railroad Company v. The Commonwealth, supra, "the Legisla-

lature provided, therefore, for the preliminary hearing before the railroad commission, not as a cumulative remedy, but that it might determine whether the carrier should be exonerated or not."

There is nothing in the principles enunciated in the cases of The Louisville & Nashville Railroad Company v. The Commonwealth, 104 Ky., 226 (20 R., 491) 46 S. W., 707, 47 S. W., 210, 598, 43 L. R. A., 541. The Louisville & Nashville Railroad Company v. The Commonwealth, 106 Ky., 633 (21 R., 232) 51 S. W., 164, 1012, or The Louisville & Nashville Railroad Company v. The Commonwealth (21 R., 239) 51 S. W., 167, inimical to the views herein expressed. In each of these cases a trial was had before the railroad commission, and a judgment refusing to exonerate the railroad rendered, as a prerequisite to the indictment by the grand jury. In each case the indictment was returned on the advice or suggestion of the commission. So far as these cases illustrate anything in the case at bar, they tend to bear out the necessity for an investigation by the commission as a condition precedent to an indictment in every case. They certainly do not militate against this view, as the slightest examination will show. The question of the necessity for an investigation by the commission as a prerequisite to an indictment never arose in this court until the I. C. R. R. v. The Commonwealth, supra. The principle announced in the case at bar is the principle of The I. C. R. R. v. Commonwealth carried to its natural and legitimate conclusion.

The guilt of the railroad in any given case does not depend on the commission, or on its rules and regulations, but on the question whether the corporation has or has not violated the provisions of section 218 of the Constitution. The investigation of the commission only establishes the fact as to whether it has or has not violated said sec-

tion. In reaching their conclusion as to whether the corporation is guilty or innocent, the commission examines into the question as to whether or not the conditions and circumstances are substantially similar. If so, the corporation is guilty; if not, it is innocent. As the guilt or innocence of the corporation depends on the existence or non-existence of facts, which are, or at least may be, ever-varying, it follows, as a legal and logical sequence, that, if the corporation is to have the benefit of these ever-varying conditions before it is indicted, such investigations must be had in each and every case, as a prerequisite to an indictment.

We conclude, therefore, that the investigation of the railroad commission, and an adverse decision by it against the railroad, are necessary, in every case, before an indictment can be had under section 820 of the Kentucky Statutes; that no declaration of the commission on the subject of competition in freights can be projected into the future, but must act alone on the present and the past. This construction, we think, is in harmony with the act in question. We believe that it puts into the hands of a brave, intelligent and zealous commission ample power to repress the wrongs of the railroads sought to be remedied, and yet relieves these corporations from the wanton assaults of narrow sectionalism or of greedy cupidity. It gives opportunity for the development of the mines and the manufactories of the State, for the expansion of its commerce, and affords to every locality such protection against invidious discrimination as is consistent with the general uplift and prosperity of the State—an uplift and prosperity whose reflex benefit, it is believed, will more than repay the given locality for any sacrifice it makes in favor of the common good.

The court below should have sustained the motion of appellant for a peremptory instruction. Wherefore the case is reversed for proceedings consistent with this opinion.

Judge Paynter's concurring opinion:

The only part of this opinion in which I concur is that the case of The Illinois Central Railroad Company v. Commonwealth, 23 R., 1159, 64 S. W., 975, controls in this case, and that therefore the peremptory instruction should have been given to find for the appellant. I do not assent to some of the statements and expressions in the opinion, nor do I agree with any statements therein which are, or seem to be, in conflict with previous opinions of this court construing section 218 of the Constitution.

I dissented from the opinion of the court in The Illinois Central Railroad Co. v. Commonwealth, 23 R., 1159, 64 S. W., 975, upon the idea that the Legislature in the enactment of section 820 had gone farther than it was authorized to go by section 218 of the Constitution. Section 218 of the Constitution reads as follows: "It shall be unlawful for any person or corporation owning or operating a railroad in this State, or any common carrier, to charge or receive any greater compensation in the aggregate for the transportation of passengers, or of property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance over the same line, in the same direction, the shorter being included within the longer distance; but this shall not be construed as authorizing any common carrier, or person or corporation, owning or operating a railroad in this State, to receive as great compensation for a shorter as for a longer distance; provided, that upon application to the railroad commission, such common

carrier, or person or corporation, owning or operating a railroad in this State, may in special cases, after investigation by the commission, be authorized to charge less for longer than for shorter distances for the transportation of passengers, or property; and the commission may, from time to time, prescribe the extent to which such common carrier, or person or corporation, owning or operating a railroad in this State, may be relieved from the operation of this section." Section 820, Kentucky Statutes, reads as follows: "If any person owning or operating a railroad in this State, or any common carrier, shall charge or receive any greater compensation in the aggregate for the transportation of passengers or property of like kind, under substantially similar circumstances and conditions, for a shorter than for a longer distance, over the same line in the same direction, the shorter being included within the longer distance, such person shall, for each offense, be guilty of a misdemeanor, and fined not less than one hundred nor more than five hundred dollars, to be recovered by indistment in the Franklin Circuit Court, or the circuit court of any county into or through which the railroad or common carriers so violating runs or carries on its business. Upon complaint made to the railroad commission that any railroad or common carrier has violated the provisions of this section, it shall be the duty of the commission to investigate the grounds of complaint, and if, after such investigation, the commission deems it proper to exonerate the railroad or common carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the commission, and a copy thereof delivered to the complainant and the railroad or common carrier and the same shall be published as a part of the report of the commission; and after such order, the railroad

Louisville & N. R. R. Co. v. Commonwealth.

or carrier shall not be prosecuted or fined on account of the complaint made. If the commission, after investigation, fails to exonerate the railroad or carrier from the operation of the provisions of this section, an order in writing to that effect shall be made by the commission and a copy thereof delivered to the complainant and the railroad or common carrier, and the same shall be published as a part of the report of the commission; and, after such order, it shall be the duty of the commission to furnish a statement of the facts, together with a copy of its order, to the grand jury of any county, the circuit court of which has jurisdiction, in order that the railroad company or carrier may be indicted for the offense; and the commission shall use proper efforts to see that such company or carrier is indicted and prosecuted."

In Illinois Central Railroad Company v. Commonwealth, the question before the court, as stated by it, was "whether, under the statute, the carrier may be indicted by the grand jury before the railroad commission has refused to exonerate it." In that case complaint had not been made to the railroad commission before the indictment was found, and the court decided that it was necessary that the railroad commission should act upon a complaint, and refuse to exonerate the carrier, before an indictment could be found. In discussing the matter, the court said: "If the Legislature had intended an indictment to be found for each offense, regardless of action by the railroad commission, we see no reason why this section might not have stopped with the first sentence, defining the defense and providing for its punishment. . . . To indict the carrier in the first place without the action of the railroad commission would be to deprive it of all benefit of this

provision. . . . The Legislature therefore provided for
the preliminary hearing before the railroad commission,
not as a cumulative remedy, but that it might determine
whether the carrier should be exonerated or not; and there-
fore it was provided that, if the commission relieved the
carrier from the operation of the section, no prosecution
could be had on account of the matter complained of."
Again the court said: "To allow the carrier to be indicted
in advance of any action by the railroad commission under
this section would be to deprive it of all opportunity for
exoneration." As I understand the facts, no complaint
was ever made to the railroad commission that the ap-
pellant had been guilty of the unlawful act for which it
was indicted. The railroad commission therefore never had
an opportunity to determine whether or not an indictment
should be found against it.

The court refusing to recede from its position in that
case, the question then arises, should a member of this
court disregard that opinion in order to sustain this prose-
cution? I am unwilling to do so. It appears that complaints
in other cases were filed with the railroad commission,
to the effect that the appellant had violated section 820 of
the Kentucky Statutes in the matter of the transportation
of coal to Lebanon; and, as the railroad commission re-
fused to exonerate in those cases, therefore it must be
held as having refused to exonerate the railroad company
from its unlawful act here in question. The court, in the
Illinois Central case, held that section 820 of the Ken-
tucky Statutes was constitutional. This act denounces a
penalty for any violation of it. It means to make a car-
rier liable to prosecution for any violation of it in the
transportation of the property of any individual, corpora-
tion, etc. It is contemplated by the section that some one

shall make complaint to the railroad commission, so that it shall act upon the complaint. It is called upon under that section to determine whether the carrier shall be exonerated from the act of which complaint is made. It is provided in the section that, if the commission refuses to exonerate the carrier, an order in writing to that effect shall be made, and a copy thereof made and delivered to the complainant and carrier; and it is further the duty of the commission to make a statement of the facts, and furnish that, together with its order, to the grand jury of the county, etc. If the opinion of the court is correct in the Illinois Central case, then the carrier is entitled to a hearing before the railroad commission on any complaint that is made of its violation of the section of the statute, and the grand jury can not return an indictment until the railroad commission has passed upon the question and refused to exonerate. Section 218 of the Constitution authorizes the railroad commission in special cases, after investigation, to allow carriers to charge less for the long than the short distance, etc., and may prescribe the extent to which such common carrier may be relieved from the operation of that section of the Constitution. A "special case" referred to in that section might embrace a case for all the coal hauled to Lebanon from some point south of there, or it might embrace a case for the transportation of all wheat that might be transported there. It was not intended to restrict it simply to permission to some carrier to make a single shipment, and charge less for the long than for the short haul. This provision of the Constitution authorizing the railroad commission to consider special cases, etc., is not for the purpose of allowing it to determine whether the carrier shall be indicted for past offenses, but is for the purpose of allowing it to

determine whether or not it shall be entitled to charge less for the longer than for the shorter distance for the transportation of passengers, property, etc., and to determine to what extent the common carrier should be relieved from the operation of the section. This section does not attempt to confer upon the railroad commission the right to relieve against previous acts, but to give it the authority to make it lawful for the carrier to charge more for the short than for the long haul. If the carrier charges more for the short than for the long haul, under substantially similar circumstances and conditions, under section 218 of the Constitution, it is guilty. It can only be guiltless under that section, for such acts, when the railroad commission has authorized it to charge less for the longer than for the short distance, or it has been relieved from the operation of the section. This section is dealing with the future, not the past, acts of the carrier. Section 820 of the Kentucky Statutes allows the commission to exonerate the carrier from a single act which it has done in violation of the statute, although the carrier had not previously been authorized to charge less for the long than for the short haul. This section is predicated upon the idea that the railroad commission has not given the carrier the right to charge less for the long than the short haul; that the carrier for that reason may have violated section 218 of the Constitution. Section 820, Kentucky Statutes, has reference to past acts, while section 218 of the Constitution is dealing with future ones.

My opinion is that section 820 of the Kentucky Statutes did not conform to the requirements of the Constitution, for reasons in part above indicated; hence I dissent in the Illinois Central case. The pardoning power is not vested in the railroad commission by the Constitution, but in the

Governor.  However, as that opinion is the law, it should be respected by this court, and the court should not allow a punishment to be inflicted upon a carrier in disregard of the law as adjudicated therein.  If this court refuses to follow the law as determined by it, such refusal is not calculated to beget respect for its opinions.  Being of the opinion that, under the rule of the Illinois Central case, the appellant was entitled to peremptory instruction, I concur in the opinion in this case to that extent only, as the opinion in that case is as binding upon me as if I had originally agreed to it.

To preserve the unity of history, I desire to add the following to my concurring opinion :

In the Illinois Central case the court had under consideration an indictment which described the offense in language as follows:

"The said Illinois Central Railroad Company, a railroad corporation owning and operating now and at the time hereinafter mentioned, a line of railroad extending from Deanfield, Ky., through Stephensburg, Ky., and Hardin county, Ky., to Louisville, Ky., did, on the —— day of October, 1898, and within twelve months before the finding of this indictment, in the said county of Hardin, unlawfully charge and receive of W. H. Oliver for the transportation of a carload of coal over said railroad from said Deanfield to said Stephensburg the sum of $35.40, being at the rate of six cents per hundred pounds, when for the transportation of a similar car load of coal of like kind from said Deanfield to said Louisville, under substantially similar circumstances and conditions, over the same line in the same direction, said Illinois Central Railroad Com-

pany did at said time charge and receive of various persons less compensation than six cents per hundred pounds, the distance from said Deanfield to said Stephensburg being shorter than and included in the distance from said Dean-field to said Louisville, and defendant, at said time, not having been authorized by the railroad commission of this Commonwealth to charge less for the transportation of coal for said longer than for said shorter distance."

The charge in the indictment was for charging W. H. Oliver more for the short than other persons were charged for the long haul, etc. It was a single shipment under consideration. The word "exoneration" is not used in section 218 of the Constitution. It appears in the statute only. Exoneration is therefore only provided for in the statute. Exoneration is "the state of being disburdened or freed from a charge." It is something that is supposed to take place after a charge has been made. The carrier for making a charge against the prohibition of section 218 of the Constitution is guilty of its violation whether the railroad commission has been called upon to relieve the carrier from its operation, and refused to do so, or has never been called upon to determine whether or not it should be relieved from its operation. When the railroad commission refuses to relieve the carrier from the operation of section 218 of the Constitution, the matter stands as if no action had been taken whatever.

Judge Nunn dissents.

Judge Hobson's dissenting opinion:

To properly understand the questions before us in this case, it is necessary to review the previous decisions of this court construing the section of the statute in contro-

versy, and the provision of the Constitution it was designed to carry into effect. In the first case (Louisville & Nashville Railroad v. Commonwealth, 104 Ky., 226 (20 R., 491) 46 S. W., 707, 47 S. W., 210, 598, 43 L. R. A., 541) it was insisted that the existence of competition at the terminus of the longer haul, of itself, took the case out of the operation of the statute and the constitutional provision; but it was held that the difference of circumstances and conditions contemplated by these provisions did not include extrinsic facts not connected with the carriage in any way, such as existence of competition at one point, and not at another. In that case it was also contended that the special case from which the carrier might be exonerated meant a special shipment, and that therefore it was necessary to aver in the indictment the amount charged and received for the longer haul, and the name of the person thus favored. The court held otherwise, on the ground that the gravamen of the offense is charging for the shorter haul a greater rate than the prevailing rate for the longer haul. The court said: "Nor was it necessary to designate any particular person or persons, probably numerous, than whom Shreve had been charged and required to pay greater compensation; for section 218 (Constitution) was intended to prevent discrimination rather between localities than between persons. So, in order to convict of an offense like the present, it suffices to state in the indictment that the specified amount charged or received for the shorter distance was greater than that charged or received from persons generally or usually for the longer distance, and to support the allegation by the carrier's published schedule of rates, or other competent evidence of the

fact." In the next case (Louisville & Nashville Railroad
v. Commonwealth, 106 Ky.; 633 (21 R., 232) 51 S. W., 164,
1012) the preceding case was adhered to. But that case
had been prepared with a view to an appeal to the United
States Supreme Court, and the question was again raised
as to what was the special case referred to in section 218
of the Constitution, and what was the meaning of the
words "complaint" and "exoneration" in section 820 of the
Kentucky Statutes. The question before the court was
whether these words referred to each shipment of freight,
or to discrimination in rates between localities. In other
words, could the carrier be exonerated as a special case
on certain class of freight between given points, or must
he be exonerated on each shipment to any individual—
whether a barrel of pork, a box of dry goods, or a car of
coal? If the latter, it was said that the statute gave
the carrier no practical protection at all, because he could
not be exonerated on any shipment until it was made, and
his exoneration on that shipment was of no effect on any
other shipment, so that he could never know how to con-
duct his business, and therefore the statute was not in
accord with the Constitution, because it afforded no prac-
tical means of exoneration from the section. In answer
to all this, the court said: "It was the aim of the Consti-
tution to require the railroads in the State to treat all lo-
calities fairly and with equality; but as differences of con-
dition, ever-varying, would constantly arise, it prescribed no
fixed rule, but created a tribunal to act as umpire between
the railroads and the people, and decide when and to what
extent a greater charge might be made for a short than
for a long haul under like circumstances and conditions,
with full power in special cases, from time to time to pre-

scribe the extent to which such common carrier or person or corporation owning or operating a railroad in this State may be relieved from the operation of this section. It is not confined in its power to each shipment as it may be made, but may prescribe from time to time a suspension of the section on freight of a given character between given points, as the public interest and the ends of justice may require." In the third case (Louisville & Nashville Railroad Company v. Commonwealth (21 R., 239) 51 S. W., 167) the question was made by the railroad company that the order of the railroad commission was improperly admitted in evidence against it. On the other hand, it was insisted by the Commonwealth that the order of the commission was properly admitted in evidence, as it was the basis of the proceeding. Although there had been some differences in the court on the other questions, on this question the whole court concurred in the judgment, that the order of the commission was properly admitted in evidence. This question had been made by the railroad company before in the first case, which had been affirmed, but in that case the railroad company insisted that the averments of the indictment were not sufficient to show that the railroad commission had refused to exonerate it. The court held the indictment sufficient. Of course it was not claimed by the court or by counsel that the order of the railroad commission was competent to be read to the jury unless it was a prerequisite to the prosecution, and the basis of it. For it could not be competent on any other ground. And the admission of it was very prejudicial, if it was incompetent, for it served to put the defendant in a bad light before the jury, and in that case the jury had inflicted a very heavy fine.

Taking these three cases, in which all the court concurred, so far as the questions now before the court go, what do they establish? (1) That section 218 of the Constitution, and the statute made to enforce it, were "intended to prevent discrimination rather between localities than between persons; that it was the aim of the Constitution to require the railroads of the State to treat all localities fairly and with equality." (2) That in special cases the commission might exonerate the carrier, but it was not confined in its power to each shipment as it might be made, but might prescribe from time to time, a suspension of the section on freight of a given character between given points, as the public interest and the ends of justice required. (3) That the order of the railroad commission refusing to exonerate the carrier was the basis of the prosecution.

After all this had been settled, the case of Illinois Central Railroad v. Commonwealth of Kentucky, 23 R., 1159, 64 S. W., 975, arose; and in it the court was urged, notwithstanding what it had previously decided, to hold that the order of the railroad commission was not the basis of the proceeding, and that a prosecution might be maintained before any order had been made by the railroad commission refusing to exonerate the carrier. The court refused to recede from its previous opinion, and this is all that was decided in that case. No question was made in that case by court or counsel as to the necessity of an exoneration of the carrier, or a refusal to exonerate him, for the shipment of a particular carload of coal, or a shipment to a particular person. The court had previously held unanimously, so far as that question went, that the exoneration need not be on each shipment, but might be on a given character of freight

between given localities.   In the opinion of the court the precise question that was in the mind of the court is shown by its statement of the case in these words:   "Appellant was indicted in the Hardin circuit court, and fined two hundred dollars, for charging more for hauling a carload of coal from Deanfield, Kentucky, to Stephensburg, Kentucky, than from Deanfield, through Stephensburg, to Louisville. The indictment was returned June 10, 1899.   At that time the railroad commission had not determined whether appellant should be exonerated as provided by statute.   The first question to be determined on the appeal is whether, under the statute, the carrier may be indicted by the grand jury before the railroad commission had refused to exonerate it." When the court used the words "exonerate," and "exoneration," it used them in the sense in which those words had, after the fullest deliberation, been defined by the entire court,—as not referring to a particular shipment, but to a difference of rate between localities.   This case merely adhered to the rule that had been before laid down, changing it in no particular, and, with the preceding cases, made out what seems to be a reasonable construction for both the carrier and the shipper, giving both some practicable protection from the statute.   When it was decided, the railroad commission, pursuant to the rule before laid down, had made general orders exonerating carriers on coal between certain points, but the Illinois Central Company was indicted before action was taken as to it.   The carrier need not be exonerated from each shipment that he makes, but may be exonerated on the rate of a given class of freight between certain points, and this exoneration remains in force until changed by the railroad commission.   So that the carrier, when his rights have thus been defined, can safely

carry on his business without incurring criminal liability until the commission makes some further order, and after that is made he must conform to it. On the other hand, the shipper, when the commission has refused to exonerate the carrier, may appeal for his protection to the grand jury of his county to indict the carrier for extorting money from him which it has no right to charge. In this way obedience to the orders of the commission is secured, shippers are protected, and at the same time the carrier can not be put to the cost of criminal prosecution without action by the railroad commission determining that a state of facts does not exist, justifying the exoneration of the carrier from the operation of the long and short haul clause; nor can he be deprived of a hearing on this question, as he would be if he might be indicted in advance of action by the railroad commission, for the evidence on this subject can not be introduced before the jury, as only the railroad commission has power to exonerate from the section.

In the majority opinion, as well as in the separate concurring opinion, none of the three first cases decided by the court are criticised or overruled, and it must be assumed from this that the court does not mean to overrule those cases. Putting those cases by the side of the opinion which is now delivered, the court places itself in a very anomalous position. It is thus held, on the one hand, that the word "complaint" and the word "exonerate," in the statute, where the carrier is exonerated, do not refer to the particular shipment by a particular shipper, but to a discrimination between localities, in giving a less rate for the long than for the short haul. And it is at the same time held that the same words in the same statute, where the carrier is not exonerated, do refer to the particular shipper, and not to

Louisville & N. R. R. Co. v. Commonwealth.

the discrimination between localities by the giving of a lower rate for the long than for the short haul. Certainly the court can not maintain such a position that the same words in the same statute have one meaning in favor of the carrier, and a different meaning against the carrier. But if the court's decision in this case is to be taken as overruling the previous cases, and determining that the words "complaint" and "exonerate," in the statute, refer to the particular shipper, either in favor of the carrier or against it, then it will follow that the exoneration of the carrier is of no service to it, except as to the particular shipment in controversy, and he can be indicted for the next shipment, and will never know in advance how intelligently to carry on his business. If such had been the legislative intent, there was no need in the statute to require action by the railroad commission before the carrier could be indicted, nor reasonably would such a heavy penalty have been imposed. The court's opinion, construing the statute to mean that the carrier could not be indicted before the commission had declined to exonerate it, rests, in the end, upon the construction of the statute made in the previous cases,—that the exoneration was not from a particular shipment, but as to the rate on the article in question between the localities.

Much has been said in the case about the hardship of it, but, when the court of last resort is influenced by such considerations as this in the construction of a statute, who shall stand up for the sanctity of the law, which, after all, is the protecting aegis of life, liberty and property? But there is no such hardship as supposed. If the commission exonerates the carrier, this order continues in force until revoked by the commission, and until then both the

carrier and the shipper know how to order their affairs.
It is the duty of the carrier to conform to the order of
the commission, where it refuses to exonerate. If a change
of circumstances arises, either the carrier or the shipper
can bring the matter to the attention of the commis-
sion, and have the question reinvestigated. In the
first case it was objected to the statute, among other
things, that it gave the carrier no right to complain, and
was therefore inconsistent with the Constitution; but the
court held that the provision of the Constitution was to
this extent self-executing, and that either the carrier or
the shipper could complain. L. & N. Railroad v. Common-
wealth, 104 Ky., supra. If, after the commission refuses
to exonerate the carrier, he, in disobedience of its order,
continues his discrimination, the state of case arises which
the Legislature contemplated in section 820, and which it,
by its severe penalties, undertook to prevent. To construe
the statute to mean that the carrier can not be indicted
without action by the railroad commission, and that it can
only be indicted then as to the particular shipment it has
investigated, is to deny the people of the State all reason-
able protection from the statute. It seems to me that
there is no reason for departing now from the conservative
middle line which the court has heretofore laid down, to
which the business of the State has been adjusted, and
which gives a reasonable protection to both the shipper
and the carrier.

The separate concurring opinion is devoted mainly to
showing that the court was wrong in the case of The
I. C. Railroad v. Commonwealth. Space does not permit
a reargument of the question then decided. Suffice it to
say that, if the statute is unconstitutional, it is the only

authority of the court for inflicting criminal punishment. The penalties therein denounced are the punishment of the acts therein provided for, and it does not follow, by any means, that the Legislature would have provided these penalties for a greater charge for the short than for the longer haul, unless it had provided for an exoneration of the carrier; for the plain purpose of the section was to provide a modus for carrying into effect the provisions of the Constitution, and to provide an adequate penalty to secure respect for the orders of the commission. It is not one of those cases, therefore, where the court could reject part of the statute as unconstitutional, and enforce the remainder. The case of Illinois Railroad v. Commonwealth was written upon the idea that this court had settled that the exoneration of the carrier was not as to each shipment, but as to the rate between localities, and that an exoneration once made thereon protected the carrier until this order of the commission was revoked. The court then merely followed its previous ruling. It did not decide that there must be a refusal to exonerate on each shipment before an indictment of the carrier could be had. The doctrine now announced is not warranted by anything in that opinion, but, on the contrary, is a departure from the principles on which that opinion is based. The ground of that decision was simply that, as the exoneration or refusal to exonerate went to the rate between the localities, the commission was to pass on the rate before the carrier could be indicted. If the commission approved the rate, there could be no indictment. If it refused to exonerate the carrier, he might be indicted, not only for what he had done, but for what he might do thereafter, in violation of the ruling of the commission. One reason which the Leg-.

islature probably had in mind in framing the statute as it did was that emergencies might arise when immediate action by the carrier might be necessary before the commission could decide; and it was allowed, at its peril, to trust to the commission giving an exoneration, if it saw fit, where the public necessities demanded it, as in the case of a coal famine, or the burning of a town, or the like. The commission was given general supervision over the matter, as it had been before, and it was supposed that no great harm in this way could be done, as complaint might be made any time to the commission.

As heretofore construed by the court, the carrier can not suffer unduly, and may safely carry on his business after the commission has once acted; and, on the other hand, the shippers are adequately protected by the power to indict and punish the carrier not only for all violations of the order of the board, but for his previous acts, if he is not exonerated.

The order of the board made in 1899 in this case, by its terms following the decision of this court, exonerated the carrier from that time and for the future, and until the further order of the board. It does not purport, on its face, to have any retroactive effect. The commission did not assume to exercise condoning power. It has no such power. It has only the power of exoneration, and, when it refuses to exonerate, its order must be obeyed while in force; and, if it is not obeyed, the carrier can only appeal for pardon to the executive as to acts done in violation of the orders of the commission.

I therefore dissent from the judgment of the court.

Judge Settle concurs in this dissent.

Petition for rehearing overruled.